## DeLOACH v. SARRATT.

1. RULE TO SHOW CAUSE—SURVIVAL OF ACTION—CONTINUANCE OF ACTION AGAINST HEIR AT LAW—PRACTICE.—When a defendant dies after answering, the plaintiff, if the cause of action survive, may continue his action against defendant's heirs at law or devisees, by serving within one year upon them a rule to show cause why the action should not be so continued, and such rule may be obtained upon *ex parte* motion and affidavit.

2. SERVICE—STUDENT.—AN HEIR AT LAW of a deceased defendant, who is a resident of this State, but who is temporarily absent out of the State at school, is properly served with a rule to show cause why action should not be continued against him, by personal service at school, and by mail, and service by publication is not necessary.

3. DISCRETION—ISSUES OUT OF CHANCERY.—It is within discretion of Circuit Judge on motion, under Code, 274a, to order issues out of chancery.

4. EVIDENCE—TAX RETURNS.—SECONDARY EVIDENCE of the contents of returns for taxation should not be admitted where it appears that the originals are in a heap of old papers in the auditor's office, and might be found in two weeks' search, when only four or five hours' search has been made.

5. Ibid.—Ibid.—Letter.—Error to receive evidence as to contents of a letter without proof of loss of original.

6. Ibid.—Witness—Examination of—Fraud.—In issues of fraud it is competent to examine party charged: (1) as to his financial condition; (2) as to his making tax returns; (3) and to put hypothetical questions as to returns; and (4) as to his crops and disposition of them.

7. Husband and Wife.—Finding of Fact that title to wife's land was in husband from partition proceedings, from husband's returning it in his own name, and his selling part of it, reversed.

8. Ibid.—Auditor's Books.—A Finding of Fact that a husband transferred his lands to his wife in his tax returns, cannot be based alone on auditor's books.

9. Ibid.—Title.—The doctrine of title by entirety does not apply, where the husband has never acquired any interest in the wife's land.

10. Fraud.—Finding that land was purchased by husband with his own money, and transferred to wife, and that both conspired to defraud husband's creditors, reversed.

11. Ibid.—The Statute of Limitations apply to actual moral fraud, and in absence of denial of knowledge within six years, the statutory bar should be sustained.

12. Estoppel—Foreclosure.—A plaintiff in foreclosure is not estopped by moving to confirm report of sales from afterwards showing that property was bought in name of wife of mortgagor, in order to defeat deficiency judgment.

13. Fraud.—Finding of fraud against husband's creditors, in purchase of land by wife upon bid transferred by husband, and borrowing money therefor, reversed.

14. Ibid.—Finding of fraud against husband's creditors, in transactions connected with purchase of land by wife with aid of brother, reversed.

15. Finding that husband had conveyed certain tracts of land to wife, reversed.

16. Accounting—Fraud.—Finding that transactions between mortgagor and mortgagee as to chattel mortgage and sale by mortgagor of mortgaged property for account of mortgagee, were a fraud upon mortgagee's creditors, reversed, but held that mortgagee must account to his creditors for balance of proceeds after payment of mortgage debt.

17. Rehearing refused.

Before Buchanan, J., Union, September, 1897. Reversed.

Action by Elizabeth DeLoach, as survivor of herself and her husband, against M. P. Sarratt and A. A. Sarratt, to set aside certain conveyances and transactions as frauds upon the creditors of A. A. Sarratt. From judgment for plaintiff, defendants appeal.

*Messrs. Munro & Munro, Duncan & Sanders,* and *Bomar & Simpson,* for appellants. *The two latter firms* cite: *Order continuing case against heirs at law of defendant, error:* 42 S. C., 383; Code, 11; 36 S. C., 562, 174. *Error not to frame issue for jury, and to hold that defendants were estopped by reason of previous motion:* 5 Rich. Eq., 359; 33 S. C., 399; 25 S. C., 72. *Error to permit introduction of auditor's books without proper search for original return:* 2 Spear, 18. *No satisfactory proof of fraudulent intent:* 10 Rich. Eq., 346. *Plaintiff's action is barred:* 52 S. C., 381; 6 Rich. Eq., 96; 27 S. C., 367; 10 Rich. Eq., 353; Bail. Eq., 459; 33 S. C., 530; 37 S. C., 376, 237. *Failure to allege knowledge of fraud within six years bars action:* Bail. Eq., 459; 6 Rich. Eq., 96; 27 S. C., 367; 52 S. C., 381. *Error to order lands of Mrs. Sarratt sold in this action:* 28 S. C., 39; 13 S. E. R., 993; 47 S. C., 525; 53 S. C., 159; 10 S. C., 317; 24 S. C., 401. *Husband held lands in trust:* 52 Am. St. R., 479; 54 Ib., 502. *Mrs. Sarratt is bona fide purchaser without notice:* 6 Rich. Eq., 76; 14 S. C., 312; 23 S. C., 501.

*Mr. Wm. Munro* (oral argument), for appellant.

*Messrs. W. B. DeLoach, Wm. B. McCaw,* and *C. E. Spencer,* contra. *Mr. McCaw* cites: *Motion for issues not denied for want of power—discretion not abused:* 45 S. C., 683; 27 S. C., 97; 41 S. C., 86. *Other defendants cannot object that O. A. Sarratt was not served:* 53 S. C., 414. *No cause of action until plaintiff had exhausted legal remedies:* 19 S. C., 482; 18 S. C., 526; 34 S. C., 153. *Burden of proof of bar on defendants:* 19 S. C., 482; Code, 94, 112 sub., 6. *Exceptions too general:* 51 S. C., 55. *Point not*

*raised on Circuit not considered on appeal:* 48 S. C., 422. *Deed not recorded and voluntary, must fall:* 18 S. C., 526; 19 S. C., 477. *Tax duplicates were best evidence here:* 14 S. C., 593; 5 Rich., 372; 19 S. C., 600; 17 S. C., 587. *Exceptions too general—involve trying case de novo—will not be considered:* 44 S. C., 485; 51 S. C., 57; 30 S. C., 170; 43 S. C., 99. *Persons making returns for taxation must make report of all transfers of real estate:* Gen. Stat., 176; Rev. Stat., 22; Rev. Stat., 1872, p. 48, sec. 10. *Deed by mortgagee of husband carries same equities as deed by husband himself:* 2 S. C., 429; 18 S. C., 429; 27 S. C., 309; 36 S. C., 569. *Probate decree in partition is binding on parties:* 18 S. C., 339; 49 S. C., 505; 34 S. C., 190. *Mortgage is not alienation:* 17 S. C., 163; 10 S. C., 354.

*Mr. Spencer* cites : *Circuit Court acquired jurisdiction of successors in interest upon death of Mrs. Sarratt:* Code, 148, 142; 35 S. C., 391; 42 S. C., 391. *Not error to refuse to refer issues to jury:* Code, 274a; Rule 28, Cir. Ct.; 5 S. C., 412. *Statute no bar:* Code, 112, sub. 6; 18 S. C., 531. *Point not made on Circuit cannot be made here:* 48 S. C., 422; 49 S. C., 21; 51 S. C., 378. *Chulahoma tract became husband's by right of survivorship:* 4 Rich. Eq., 80; 49 S. C., 505. *Rent went to husband by acquiescence of wife:* 6 S. C., 216; 24 S. C., 282.

The opinion herein was filed May 1st, 1899, but remittitur held upon petition for rehearing until

June 3, 1899. The opinion of the Court was delivered by

MR. JUSTICE POPE. When A. A. Sarratt and M. P. Sarratt, his wife, began their married life in the month of November, 1868, they occupied a tract of land known as Chulahoma, containing 430 acres, more or less, belonging to the estate of A. O. Walker, deceased, who was the father of Mrs. M. P. Sarratt. In the year 1870, the said A. A. Sarratt and M. P. Sarratt, his wife, as plaintiffs, began a suit

17—55

against the widow and children of the said A. O. Walker, and also his administrator, as defendants, in the Probate Court for Union County, in order that the lands of the estate of A. O. Walker, deceased, might be partitioned amongst his widow and children.    In the year 1874, on the return of commissioners in partition, such lands were so partitioned, and the Chulahoma tract was assigned to the plaintiffs, A. A. Sarratt and M. P. Sarratt, valued at over $4,000, and this amount being in excess of Mrs. M. P. Sarratt's share by some $1,600, *she* was ordered to mortgage the same to secure the payment of the said $1,600, to such heirs at law of A. O. Walker, deceased, as were not given lands of equal value, so as to equalize the shares therein.    As years rolled on, A. A. Sarratt purchased and took title in his own name to a tract of land known as the King tract, containing 365 acres.    On the 27th November, 1880, A. A. Sarratt purchased from James E. DeLoach and Elizabeth, his wife, a tract containing 1,200 acres, at the price of $20,000, payable at the expiration of ten years from the year 1880, and bearing five per cent. interest per annum, payable each year, and executed a mortgage of the 1,200 acres to them to secure said debt, both principal and interest.    Mrs. M. P. Sarratt earnestly opposed the purchase by her husband of this 1,200 acres of land.    In the year 1883, the said A. A. Sarratt sold to his wife's brother, S. O. Walker, ninety-eight acres off of the Chulahoma tract of land at the price of $2,000, and made his deed alone for it.    This sale of ninety-eight acres off of the Chulahoma tract left it containing 332 acres.    From the date of his purchase of the DeLoach lands, and especially about the year 1883, A. A. Sarratt expended considerable sums of money in the improvement of such lands; he cleared. forty or fifty acres of original forest ·for cultivation; he added an "L" to the original dwelling house; he built eleven tenant houses with brick chimneys; he erected a two-story grain house; he built a new gin house and repaired the old one; he constructed a large stable, fifteen feet by thirty feet. His estimate was that such improvements cost in the neigh-

borhood of $5,000. One of his witnesses estimated the buildings erected at over $2,000. Two of plaintiff's witnesses, while not denying the erection of the improvements and the clearing of the land, did not value the cost thereof at anything like his figures. Each year from 1880 for eight years, A. A. Sarratt paid the DeLoachs $1,000 as the interest on $20,000, at five per cent. per annum. In the year 1884, A. A. Sarratt conveyed the King tract of land, containing 365 acres, to John B. Foster, the purchase money being secured by a mortgage. John B. Foster, not being able to pay the purchase money of the King tract of land, reconveyed the same to A. A. Sarratt in the year 1886. In the year 1888, on the 12th November, Mrs. M. P. Sarratt purchased the Woolbright tract of land, containing 295 acres. In the year 1889, A. A. Sarratt purchased the Thompson Mill tract, containing ninety acres. Up to the year 1890, there was no encumbrance upon the lands or other property of A. A. Sarratt except the mortgage over the 1,200 acres of the DeLoach lands to J. E. and Elizabeth DeLoach. But on 23d April of the year 1890, A. A. Sarratt mortgaged the King tract, of 365 acres and the Thompson Mill tract of ninety acres, to J. J. Magness, to secure a note to said Magness for $1,500, and also a note of A. A. Sarratt to J. N. Wood, with J. J. Magness as his surety, for the loan of $3,000, due in twelve months; and in 1891, A. A. Sarratt having made default in the payment of his debt to Wood, the two tracts mortgaged by A. A. Sarratt to J. J. Magness were sold by A. N. Wood at public sale at Union C. H., and purchased by Mrs. M. P. Sarratt at the price of $3,000, and deed was made in name of A. A. Sarratt by A. N. Wood, his attorney in fact, to Mrs. M. P. Sarratt. James E. DeLoach and Elizabeth DeLoach, his wife, commenced their action against A. A. Sarratt on 1st March, 1890, to foreclose their mortgage on the 1,200 acres of land, and also to recover judgment for any deficiency that might be after a sale of said lands to pay the mortgage debt; and on the 13th day of October, 1891, a decree was rendered ordering a sale of said

lands under a division into several tracts instead of in one body. Sale was made under such decree on the 4th day of January, 1892, of all the 1,200 acres of land. Mrs. M. P. Sarratt purchased 185 7-10 acres thereof at $2,000. The sale realized a sufficient amount to pay on the amount of judgment on that day of $23,302.82 to reduce the judgment to $11,201.24. This last amount, being the deficiency, was reported to the Court, and by such Court made its judgment on the 15th October, 1892, which judgment having been duly enrolled, an execution was issued thereon on the 20th October, 1892. This execution, on the 7th day of January, 1893, was returned by the sheriff as follows: "The within named A. A. Sarratt has not any goods or chattels, lands, tenements or hereditaments, within Union County, whereof I can levy, as within commanded." On the first day of May, 1894, James E. DeLoach departed this life. On the day of March, 1896, Elizabeth DeLoach, as plaintiff, commenced an action against Mary P. Sarratt and A. A. Sarratt, as defendants, by a summons and complaint, wherein she alleged the origin and developed history of the bond and mortgage of A. A. Saratt for $20,000, dated 26th November, 1880, to James E. DeLoach and Elizabeth De-Loach, including the suit of the latter against A. A. Sarratt thereupon—the sale of mortgaged 1,200 acres of land—the application of the proceeds of sale to such bond, and the fact that there was a deficiency of over $11,000 thereof, which deficiency was put into a judgment against A. A. Sarratt on the 20th October, 1892, and that execution was duly issued for the recovery of such deficiency, and that on the 7th day of January, 1893, J. G. Long, as sheriff of Union County, returned such execution *nulla bona*. That she is the survivor of James E. DeLoach and Elizabeth DeLoach. The complaint also alleges in paragraph

"*Fourth.* That quite recently, and since the return of *nulla bona* by the sheriff, in the manner above set forth, the plaintiff has learned, been informed and believes, that A. A. Sarratt, for a number of years prior to the commencement of

the action mentioned and described in the first and second paragraphs hereof, and up to a comparatively short time before the institution of said action, was seized and possessed of lands in Union County, in the State aforesaid, to the amount of 2,245 acres, the said A. A. Sarratt having, instead of paying the instalments of his mortgage indebtedness to James E. and Elizabeth DeLoach, as they became due, made purchases of real estate up to and as late as the 4th day of December, 1889, for which he paid large sums of money, aggregating at least $4,600 (all of which was made by his farming operations on the DeLoach tract), thereby swelling the aggregate number of acres owned and possessed by the said A. A. Sarratt, including his DeLoach tract, to 2,245, and the records in the office of the register of mesne conveyance for Union County do not show that any part thereof has been sold, transferred and conveyed to any one whomsoever, except the DeLoach tract, which has been sold under decree of foreclosure as above mentioned. Notwithstanding this state of facts, the aforesaid A. A. Sarratt, at the time the sheriff was ordered to levy the execution, and ever since that time, has claimed that he has no property, real or personal, that is subject to levy and sale under execution, and since 1892 up to the present time, has published to the world that he does not own so much as one foot of real estate in Union County, and not in excess of $140 worth of personal property."

"*Fifth.* That the defendant, Mrs. M. P. Sarratt, who is the wife of A. A. Sarratt, until the year 1890, did not possess nor did she claim to possess any property, either real or personal, in her own right or otherwise; but since the recovery of judgment in the case of James E. DeLoach and Elizabeth DeLoach, his wife, *vs.* A. A. Sarratt, and the issue of execution and the sheriff's return of '*nulla bona*' thereupon, plaintiff has learned, been informed and believes, that since 1890 the said Mrs. M. P. Sarratt claims that her husband, A. A. Sarratt, in 1889 conveyed and transferred to her 665 acres of his land in Union County, in the State aforesaid, and that

he again, in the year 1891, transferred and conveyed to her 642 additional acres of his land in said county and State; but diligent search of the records in the office of the register of mesne conveyance for the aforesaid county of Union, made as recently as the 15th day of February, 1896, reveals the fact that if such alleged transfers and conveyances have ever been made by the said A. A. Sarratt to his wife, the said Mrs. M. P. Sarratt, the same have not been recorded as required by law, or at all, either within time or out of time."

"*Sixth.* That the alleged conveyances and transfers of land by A. A. Sarratt to Mrs. M. P. Sarratt, his wife, whereby 1, 307 acres of land in Union County, in the State aforesaid, are alleged to have been conveyed from the former to the latter, if ever made, were and are wholly pretensive, utterly without consideration, and were made without the knowledge of either James E. DeLoach or Elizabeth De-Loach, and without notice, either actual or constructive, to this plaintiff or to her coplaintiff, James E. DeLoach, in his lifetime. That the said pretensive conveyances from A. A. Sarratt to Mrs. M. P. Sarratt, if any such were ever made, were executed, as plaintiff is informed and believes, shortly before and in anticipation of the action for foreclosure and sale, instituted by James E. DeLoach and Elizabeth De-Loach, his wife, on the first day of March, 1890, and shortly after the recovery of judgment in said action, and the establishment of the mortgage debt at $22,941.14, and were made with the intention and purpose to defeat, hinder, delay and defraud the plaintiffs in that action, and the plaintiff, as the survivor of them, in the collection of the large deficiency found and adjudged to be due them by the said A. A. Sarratt on his mortgage debt. In this connection, the plaintiff avers that the said A. A. Sarratt at the date of said pretensive conveyances, and of each of them, was totally insolvent, and his insolvency was known to his wife, the said Mrs. M. P. Sarratt, the pretensive grantee. And the plaintiff avers and charges further, that at the times of the various pretensive transactions between A. A. Sarratt and his wife, Mrs. M. P.

Sarratt, by means of which, plaintiff is informed and be-
lieves, that all of the property of the said A. A. Sarratt, both
real and personal, was transferred to his aforesaid wife, the
said A. A. Sarratt was insolvent, and the defendant, Mrs.
M. P. Sarratt, was either positively apprised of her hus-
band's insolvency, or had good reason to know that he was
insolvent, and the various pretensive conveyances and trans-
fers were had and made in pursuance of an original design
and intent of the said A. A. Sarratt and M. P. Sarratt (the
latter having been constituted a pretensive creditor of the
former in furtherance of the scheme), determined on by
them at the inception of each of the said transactions, to
assign and transfer all of the property of the said A. A. Sar-
ratt to his wife, Mrs. M. P. Sarratt, for the benefit of his said
wife, and through her for the benefit of himself, to the exclu-
sion of all his *bona fide* creditors, and particularly James E.
and Elizabeth DeLoach, and this plaintiff as the survivor of
them."

"*Seventh.* That the various pretensive conveyances from
A. A. Sarratt to his wife, Mrs. M. P. Sarratt, having never
been recorded, plaintiff cannot attach copies thereof or exhib-
its to this complaint, but she avers and charges on information
and belief that said conveyances, if in existence, as alleged
by the defendants, cover all the real estate that A. A. Sarratt
was seized and possessed of in Union County, S. C., and em-
braced and covered the following tracts of land, together with
other tracts, the descriptions of which plaintiff has not been
able to ascertain, viz: 1. One moiety of all that tract of land,
situated in Union County, S. C., known as the Thompson
Mill tract, with the mill and machinery, the said moiety con-
taining ninety-eight acres, more or less, as will more particu-
larly appear, reference being had to the deed of James
Munro, master, to A. A. Sarratt, dated November 4th, 1889,
and recorded * * * December 13th, 1889. 2. One undi-
vided moiety in and to all that tract of land, situated in
Union County, S. C., known as the Thompson Mills, and also
the mill and machinery thereon—said undivided moiety con-

taining ninety-eight acres, more or less, bounded by 'lands, of J. J. Fowler, Mrs. Carothers, Clough Inman and Clem Inman, as will more particularly appear, reference being had to deed from James Munro, master, to A. A. Sarratt, dated December 4th, 1889, and recorded * * *. 3. All that certain tract of land, known as the Woolbright tract, bounded, &c., containing 295 acres, deed recorded on December 13th, 1889. 4. All that tract, containing 365 1-2 acres, recorded in the office of the register of mesne conveyance for Union County, in book 29, page 750. 5. All that tract, containing 302 acres, deed recorded 10th June, 1879, in book 25, page 405. 6. A certain lot of land, containing 63 4-10 acres, deed recorded September 5th, 1894. 7. All that tract, containing 185 7-10, being. that tract sold by C. H. Peake, as master, in the case of J. E. and Elizabeth DeLoach _v._ A. A. Sarratt, 4th January, 1893."

"_Eighth._" Plaintiff in this paragraph charges that while the title to the 295 acres was made by James Munro, as master, to Mrs. M. P. Sarratt, the purchase money was paid by A. A. Sarratt, and that such resort of A. A. Sarratt was had to hinder, defeat, delay and defraud his creditors; that A. A. Sarratt was insolvent, that Mrs. M. P. Sarratt had knowledge of the insolvency of her husband, and having such knowledge, co-operating with her said husband in anticipation of plaintiff's judgment in foreclosure as aforesaid, and sale of the 1,200 acres of land, bought by A. A. Sarratt of the plaintiffs in the first suit begun in 1890, she intended by such purchase to defeat plaintiff's recovery against A. A. Sarratt.

"_Ninth._" In this paragraph the plaintiff charges that while the said Mrs. M. P. Sarratt has the title to the 185 4-10 acres, purchased at master's sale of the 1,200 acres under the judgment in foreclosure of J. E. and E. DeLoach _v._ A. A. Sarratt, 4th January, 1893, yet said purchase so made by Mrs. Sarratt was made with the funds of her husband, A. A. Sarratt, who was then insolvent, and had already transferred all his property to his wife, which said wife knew of his insol-

vency, and took the title to defeat, delay, hinder and defraud the plaintiffs in the first suit, to wit: in 1890.

"*Tenth.*" The plaintiff in this paragraph charges that if the lands conveyed to Mrs. Sarratt by James Munro, as master, and C. H. Peake, as master, and all the personal property of A. A. Sarratt, which he has conveyed to Mrs. M. P. Sarratt, should be sold, the proceeds of such sales would not discharge the plaintiff's judgment for deficiency—over $11,000.

"Wherefore, plaintiff prays: 1st. That each and every one of the pretensive deeds of conveyance from A. A. Sarratt to his wife, M. P. Sarratt, whether of real or personal property, be adjudged fraudulent and void, and that the same be vacated and set aside. ˙2d. That the consideration of each of the deeds from James Munro, master, and from C. H. Peake, master, to M. P. Sarratt, described in subdivisions 3 and 7 of the seventh paragraph of the complaint, respectively, be adjudged to have been paid with the money of the defendant, A. A. Sarratt, and that the deeds were taken in the name of Mrs. M. P. Sarratt to defeat, delay, hinder and defraud James E. DeLoach and Elizabeth DeLoach, in the collection of the large deficiency adjudged to be due them by A. A. Sarratt on his mortgage debt. 3d. That A. A. Sarratt invested his own money in two certain tracts of land mentioned and described in subdivisions 3 and 7 of the seventh paragraph of the complaint, to which money his creditors were entitled, and had the land conveyed to his wife as a gift, to the prejudice of his creditors, and that, therefore, it be adjudged, that the plaintiff in this action, as survivor of James E. and Elizabeth DeLoach, has the right to follow that money into the property, and to have the property sold for the purpose of getting out of it that to which, as survivor as aforesaid, she has the right. 4th. That the lands conveyed to M. P. Sarratt by James Munro, master, and C. H. Peake, master, respectively, be sold, and the proceeds thereof applied in payment *pro tanto* upon the deficiency adjudged to be due by A. A. Sarratt on his mortgage

debt to James E. DeLoach and Elizabeth DeLoach, and to the plaintiff as the survivor. 5th. That the judgment for the deficiency due to J. E. DeLoach and Elizabeth DeLoach by A. A. Sarratt on his mortgage debt, be declared a first lien upon all the lands covered by the pretensive deeds from A. A. Sarratt to M. P. Sarratt, and that the lien of the said judgment be transferred and attach to the proceeds of sale of all of the said tracts of land, and also to the proceeds of the sale of the two tracts of land in which the title was made to M. P. Sarratt by James Munro, master, and C. H. Peake, master, respectively. 6th. That all the lands embraced within the pretensive deeds from A. A. Sarratt to M. P. Sarratt be sold, under the order of this Court, and the proceeds applied pro tanto to the payment of the judgment for the deficiency due to J. E. DeLoach and Elizabeth DeLoach, and to the plaintiff, as their survivor, by A. A. Sarratt upon his mortgage debt. 7th. That a receiver be appointed to collect and hold the rents from all the lands described in the complaint, during the litigation, subject to the further order of the Court. 8th. That the defendants be required to pay the costs of this action. 9th. For such other and further relief as to the Court shall seem equitable and just." The complaint was duly verified by the plaintiff herself.

The answer of Mrs. Mary Pacolet Sarratt and A. A. Sarratt, each separately made, were verified by the parties themselves, in which verification each swears that all the matters and things set up in said answers, respectively, are true of their own knowledge, except that allegation charging that plaintiffs, James E. DeLoach and Elizabeth, his wife, had notice of each and every purchase by and conveyance to Mrs. M. P. Sarratt of lands, which allegation is made upon information and belief. Mrs. Sarratt's answer alleges that on the 26th November, 1880, and ever since that date, she was seized and possessed of valuable real estate, located in Union County, which fact was well known by both James and Elizabeth DeLoach, and that since that date, she (Mrs. Sarratt) has acquired by purchase and payment therefor, with

her own means and funds, the following additional lands, to wit: (1) 185 7-10 acres, part of the DeLoach place; (2) Woolbright place, of 295 acres; (3) Thompson Mill tract, of ninety-eight acres; (4) The parcel of 365 1-2 acres, on waters of Thickety creek, and that the parcels "(3)" and "(4)" were at the time she purchased them owned by her husband, A. A. Sarratt, who had mortgaged them, and that she purchased them at the public sale in foreclosure of the mortgage at full value, and afterwards received title therefor. Of which facts, the present plaintiff and her husband had full notice of each purchase at the time of purchase, and said lands were at the time of the commencement of this action her freehold. She further alleges in her answer: "2. This defendant denies the allegations contained in the paragraph numbered fifth of the complaint, except the allegation that she is the wife of her codefendant, and the further allegation that no conveyance to her by her said husband is on record, and denies that any other lands, except as hereinbefore alleged, have been conveyed to her." "3. This defendant denies specifically each and every allegation of the paragraph numbered sixth of the complaint, and avers that the plaintiff and her husband had notice of each and every purchase by and conveyance to her of lands; she denies that there was ever any pretensive or collusive conveyance or transaction of any sort between her and her said husband, or any fraudulent act done by her, or by and between him and her, and she denies each and every fraudulent act charged or alleged, and all and every purpose and intent to defeat, hinder, delay or defraud the plaintiff, as survivor, or the plaintiff and her said husband, or either of them. And she denies that she had notice or knowledge of the insolvency of her said husband, or had reason to know same; and denies that he was insolvent at the time of the said conveyance to her." "4. This defendant specifically denies each and every allegation of the paragraphs numbered eighth and ninth of the complaint. She denies all fraud and fraudulent acts, intents, purposes or devices therein alleged, and denies all knowledge of the

alleged insolvency of her codefendant, or any expected large or other deficiency upon any anticipated suit against him, or deficiency upon any judgment against him." "5th. Defendant further denies that her codefendant ever transferred to her any personal property or any moneys, as charged or alleged in the complaint, or that she was ever made or became a pretensive or collusive creditor of his, or that she has been guilty of any fraud, or fraudulent intent, purpose or act, or that any pretensive deeds were made to her; and she denies all fraud and fraudulent intent, purpose or act by her codefendant, or any knowledge by her of the same." 6. The defendant admits paragraphs 1, 2, 3 of the complaint, and she alleges that the purchase price of the lands mentioned in the paragraph first of the complaint, containing about 1,200 acres, was $20,000, and the purchase was made with the understanding and agreement at the time and afterwards for valuable consideration, that if her codefendant should be unable to pay for the same at maturity, or should so desire, the vendors, plaintiff and her said husband, would accept a reconveyance of same, and cancel the mortgage securities, which agreement they refused to carry out, and such refusal was a fraud upon the codefendant." "7. Defendant denies the allegations, that instead of paying the instalments of his mortgage indebtedness as they became due, her codefendant made purchases of real estate with the proceeds of his farming operations upon the DeLoach tract, and alleges that he not only paid said instalments as they became due, aggregating about $8,000, but expended large sums of money, amounting to many thousands of dollars more, in remodelling and repairing the mansion house, and in erecting tenant houses, gin-houses, barns, storehouses and other valuable permanent improvements upon the premises, which greatly enhanced its value as a plantation, and at same time made it more desirable as a place of residence; and that at the time of the sale thereof under the judgment for foreclosure, said lands were intrinsically of much greater value than when purchased by her codefendant, and which the

plaintiff and her said husband well knew would be the case
when sold by them." "8. Defendant denies all allegations of
the complaint inconsistent with the defense herein alleged,
&c." "9. Defendant pleads. formally the statute of limita-
tions arising from the lapse of more than six years from the
commencement of this action to the dates of alleged convey-
ances, &c."

The defendant, A. A. Sarratt, in his answer, asserts with
all positiveness a denial of all the allegations of the com-
plaint at variance with the allegations set up in the answer
of his wife; he reiterates a positive denial of all fraud, fraud-
ulent intents, devices and acts; alleges that his being now
divested of all property except some judgments against
others is the result of accident, in the way of failure of crops,
low prices thereof, shrinkage in values, &c.

The two answers were served in April, 1896.   On the 22d
day of April, 1896, the issues were joined.   On the 3d day
of July, 1896, a notice, signed by Messrs. Munro & Munro,
as defendants' attorneys, together with an affidavit of Wm.
Munro, Esq., was prepared, and on the 4th July, 1896, was
duly served on plaintiff's attorneys, whereby the plaintiff
was notified that at the next sitting of the Court of Common
Pleas for Union County, on July 8th, 1896, at 10 o'clock A.
M., or as soon thereafter as counsel can be heard, the defend-
ants would apply for an order, "setting the issues of this case
for trial by a jury, or for such other relief as may be best."
(The brief is imperfectly printed, and no doubt the notice
called for the settlement of such issues of fact relating to title
to land, &c., as the parties might desire.)   This motion was
not called up at such July term, 1896, but was called up be-
fore his Honor, Judge Ernest Gary, at the September term,
1896.   At that term, in connection with this notice, the
plaintiffs' attorneys by their affidavit, brought it to the atten-
tion of the presiding Judge that Mrs. Mary Pacolet Sarratt
had departed this life on the 13th day of September, 1896,
survived by her husband, the defendant, A. A. Sarratt, and
her eleven children, to wit: Sarah E. Rice, Olive E. Sarratt,

Inez L. Sarratt, Sidney G. Sarratt, William J. Sarratt, Ann Pacolet, James A. Sarratt, Ethel W. Sarratt, Clara H. Sarratt, Melvina W. Sarratt, and Vivian Sarratt, as the successors in interest of the said Mrs. Mary P. Sarratt, and that the plaintiff is desirous of procuring an order allowing the action to be continued against the successors in interest of the aforesaid M. P. Sarratt, pursuant to the provisions of section 142 of the Code of Procedure of South Carolina. Judge Ernest Gary, on the 28th September, 1896, granted this order: "It appearing to the satisfaction of the Court that since the commencement of this action, and after answers of each of the defendants had been served and filed, the defendant, M. P. Sarratt, died on the      day of September, 1896, leaving as her successors in interest, her husband, the defendant, A. A. Sarratt, and the following children, namely: Sarah E. Rice, Oliver Edward Sarratt, Inez L. Sarratt, Sidney G. Sarratt, Wm. Judson Sarratt, Ann Pacolet Sarratt, James A. Sarratt, Ethel W. Sarratt, Clara Hoey Sarratt, Melvina Walker Sarratt, and Vivian Sarratt, on motion of W. B. McCaw and W. B. DeLoach, attorneys for plaintiff, it is ordered: 1. That this action be continued against the parties above named, as the heirs at law and successors in interest of Mary Pacolet Sarratt, and also against any executor or executors, administrator or administrators of the said Mary Pacolet Sarratt, accordingly as it may appear that she dies either testate or intestate.  2. That the infants, Sidney G. Sarratt, Wm. Judson Sarratt, M. P. Sarratt, Jas. A. Sarratt, Ethel W. Sarratt, Clara Hoey Sarratt, Melvina Walker Sarratt, and Vivian Sarratt, be allowed twenty days after the date of service of a copy of this order upon each of them, to apply for the appointment of a guardian *ad litem* to appear and defend in their behalf the issues already raised by the answer of the defendant, M. P. Sarratt; and in default thereof, that the plaintiff may apply to this Court, or to a Judge of a Court of Common Pleas at chambers, or to the Probate Judge of Union County, for an order appointing a guardian *ad litem* for the above named

infants, and directing such guardian *ad litem* to appear in behalf of such infants and defend the issues already raised by the answer of Mary Pacolet Sarratt, now deceased. That each of the adult heirs and successors in interest of the said Mary Pacolet Sarratt, be and they are hereby required to appear and defend the issues as already settled by the answer of Mary Pacolet Sarratt, within twenty days after service of a copy of this order upon them. 3d. If it should appear that Mary Pacolet Sarratt died testate, a copy of this order must also be served upon any devisees and legatees under said will, who shall be allowed twenty days from the service of a copy of this order in which to appear and defend the issues as settled by the answer of M. P. Sarratt."

Judge Gary also passed the order of which this is a copy: "A motion was made in this cause before me by Messrs. Munro & Munro, in behalf of the defendants, for issues to be tried by a jury pursuant to notice dated July 3d, 1896, and served July 4th, 1896. The motion was resisted on the grounds that no notice of intention to move for issues to be tried by a jury, together with a copy of the questions of fact to be submitted to the jury, was served upon the plaintiff or her attorneys within ten days after issue was joined, as required by Rule 28 of the Circuit Court, and was further resisted on the ground that the notice of motion was not sufficiently definite and explicit, and was not made on the first day of the Court of Common Pleas for Union County, as fixed by law. Affidavits were made and filed by attorneys for plaintiff, showing that since commencement of this action and after the answer of defendants had been served and filed, the defendant, M. P. Sarratt, died, leaving as her heirs at law and successors in interest, her husband, A. A. Sarratt and eleven children, eight of whom are infants under 21 years of age. Under these circumstances and the facts developed, the Court made no ruling, and the rights and status of the parties are preserved as they stood before the hearing of defendants' motion, the Court considering that it would be premature to submit issues or pass upon the rights

of the parties before the infants and other parties in interest were made parties to this cause."

All the parties ordered to be made as parties resided in this State, but one, who was temporarily absent attending the United States Academy at West Point, in the State of New York. All were served with a certified copy of this order, including Edwin O. Sarratt, at West Point, in the State of New York. All appeared by attorney, including the eight minor children by a guardian *ad litem* duly appointed, except the said Edwin O. Sarratt.

The motion to refer issues to a jury was presented to Judge Watts, but on account of sickness of plaintiff's attorneys, the motion was continued in like plight. It came on to be presented before his Honor, Judge Buchanan, at the July term, 1897, of Court of Common Pleas for Union County. The whole case was heard before such Circuit Judge on the pleadings and testimony, both oral and documentary, and on the 9th day of September, 1897, Judge Buchanan filed his decree. He found against the defendants on all the points of difference between the parties. The defendants now appeal from said decree upon about 170 exceptions, inclusive of the subdivisions of the grounds of appeal, which are sixty-six in number. And it will now devolve upon this Court to pass upon all questions which fairly arise upon the record, but in doing so we will not take up these 170 exceptions *seriatim*. Possibly a clearer mode of examining them will be that hereafter suggested. But before proceeding to do this, it is necessary for us to state that the defendant, A. A. Sarratt, departed this life, intestate, on or about the      day of December, 1898. By consent, the following order was passed by this (the Supreme) Court on the 16th January, 1899: "It appearing to the satisfaction of the Court that M. P. Sarratt departed this life since the commencement of this action, and her executor, A. A. Sarratt (who was also guardian *ad litem* of the infant defendants, to wit: Vivian Sarratt, Clara H. Sarratt, Ethel W. Sarratt, James A. Sarratt, and Annie P. Sarratt), having, since this action was

heard in the Circuit Court, departed this life.   On motion of Munro & Munro, Duncan & Sanders, and Bomar & Simpson, *Ordered,* That Sydney G. Sarratt and W. J. Sarratt, who have been appointed administrators of the estate of A. A. Sarratt, deceased, and administrators with the will annexed of M. P. Sarratt, deceased, and guardian *ad litem* of Vivian Sarratt, Clara H. Sarratt, Ethel W. Sarratt, James A. Sarratt, and Annie P. Sarratt, be and they are hereby substituted in the place and stead of the above named A. A. Sarratt, deceased, in his own right, and as executor of M. P. Sarratt, deceased, and as guardian *ad litem* of the above named infant defendants."

We will now consider the exceptions, and in doing so the first question presented is : Were all the proper parties as successors in the interest of Mrs. M. P. Sarratt, deceased, before the Court?   This question, under the facts of the case at bar, resolves itself into two otheres : (a) Was the order of Judge Ernest Gary, passed on 28th September, 1896, the proper method to pursue under section 142 of our Code of Procedure?   (b) If so, was Judge Buchanan correct in holding that Edwin O. Sarratt was properly served with a copy of Judge Gary's order?   (a) When Mrs. Mary P. Sarratt departed this life, on 13th September, 1896, the issues as raised by the pleadings had all been joined, and that, too, as early as the 22d day of April, 1896; and under these issues her right, as against the plaintiff, to hold as the owner thereof, the specific parcels or tracts of land in her answer enumerated, was contested.   When she died, either by operation of law, her title to these specific tracts of land was vested in her husband and her eleven children, or, in the event of her testacy, in such persons as she might in her will indicate.   But whether she died *intestate* or *testate,* as to these lands, her heirs at law, or devisees, as the case might be, could only hold such lands subject to all the defects or advantages, as the same were in her hands.   The Court, so to speak, had seized upon these lands under the issue of right as between the plaintiff and

18—55

the defendant, Mrs. M. P. Sarratt, and by its judgment would settle such right between them. As was well said by Chief Justice McIver, in speaking of section 142 of the Code, in *Dunham* v. *Carson,* 42 S. C., at page 388: "It seems to us that the manifest object of the Code of Procedure was to carry out the mandate of the Constitution (1868), as contained in section 3, article 5, 'to simplify and abridge the rule, practice, pleadings and forms of the Courts now in use in this State,' and, therefore, when by section 142 of the Code it was provided that 'no action shall abate by the death of * * a party, if the cause of action survive or continue. In case of the death of * * a party, the Court, on motion, at any time within one year thereafter * * may allow the action to be continued by or against his representative or successor in interest,' the manifest purpose was to dispense with the necessity of the cumbrous proceedings by bill and its accompaniments, and to substitute in lieu thereof a simple motion; and such seems to have been the view taken by this Court in *Best* v. *Sanders,* 22 S. C., 589." The matter of the death of Mrs. Mary P. Sarratt, and the fact that she was survived by her husband and eleven children as her successors in interest, was presented to the Circuit Judge, Judge Gary, by the affidavit of the plaintiff's attorneys. A. A. Sarratt, the executor of the will of Mrs. M. P. Sarratt, deceased, and *ten* of the eleven children who were made her devisees, have already adopted the form prescribed in Judge Gary's said order, and appeared in the action as such successors. But E. O. Sarratt has not appeared or answered. So it will be necessary for us to continue our investigation. Certainly the name of Edwin O. Sarratt is set out in the affidavit of plaintiff's attorneys, as one of the children who survived Mrs. Mary P. Sarratt, deceased. What was the practice referred to in Dunham *v.* Carson, *supra?* The words are: "We may add that the proper practice in a case of this kind is for the party, who desires to continue the action against the representatives of a deceased party, to make an *ex parte* application, based upon a proper showing by

affidavit, for a rule against the persons sought to be brought in, requiring them to show cause why the action should not be continued against them in the character ascribed to them; and upon default in showing good cause, the action will be so continued." So far as E. O. Sarratt is concerned, it may be said: *first,* an *ex parte* application within one year of the death of Mrs. Sarratt has been made by affidavit; *second,* that he has been named as one of the parties as a successor in interest of his mother, against whom it is desired that plaintiff's action be continued; *third,* that while the form, adopted for the purpose of procuring E. O. Sarratt to come in and contest the fact of his being such successor in interest, is not quite in the shape of a rule to show cause, yet practically it is a rule to show cause. We overrule this objection. (b) We think some of the trouble with the other defendants in regard to the service of Judge Gary's order on the code-fendant, E. O. Sarratt, while at West Point, in the State of New York, has arisen from the fact that they seem to regard that place—West Point—as his residence, his domicile. That is not so. Young Sarratt was merely a student in the United States Military Academy at West Point, in the State of New York, but he was still a citizen of the State of South Carolina, and his residence was in this State—for it must be remembered that it was while he was such student that the service was made upon him. But it is claimed that, he being absent from the State of South Carolina, a notice by publication was necessary. The present status of E. O. Sarratt is not that of a party defendant in his own right—such a party against whom a judgment is sought *in personam;* but rather a judgment *in rem* is sought, to keep him from succeeding to a right held by another in certain lands, and in an action where the issues were made up, and by which issues the right of that "another" was denied. The rights of E. O. Sarratt, if he were made a party by a bill of reviver, or a supplemental bill in the nature of a bill in reviver, would only be to deny that he was a successor in interest of the said Mrs. Mary P. Sarratt; he could

not alter by his pleading the issues which had been already joined between the plaintiff and his mother.   He has been served with a certified copy of the order of Judge Gary; this fact is made to appear in three ways : *first,* by his receipt in writing to the postmaster at West Point, in the State of New York; *second,* by his sworn testimony in this very case; and *third,* by the certificate of the sheriff of the county in New York where West Point is located.   We overrule all the exceptions relating to these matters.

The next question presented is : Did Judge Buchanan err in not referring certain issues to the jury, as called for by the notice of Messrs. Munro & Munro, as attorneys for Mr. and Mrs. Sarratt?  It is scarcely necessary to pursue an extended inquiry here.   The defendants evidently were anxious to obtain the verdict of a jury upon quite a number of the issues made by the pleadings under that section of our Code of Procedure known as *section* 274a.   As is well known to the profession, this section 274a was the result of legislation in 1890 (see XX. Stat. at Large, 696), by which it was sought to make the verdict of a jury upon issues out of Chancery conclusive.   If a Circuit Judge frames issues under this section, a verdict is rendered, and he does not grant a new trial in regard thereto, the verdict of the jury is conclusive.   Neither Judge Gary nor Judge Watts passed upon this application, but certainly Judge Buchanan refused to refer these issues.   It matters not to us what his reasons as given may be; by the language of the section it is within the Circuit Judge's discretion to order these issues or to refuse to order them.   This Court could not undertake to interfere with the discretion of a Circuit Judge in this matter.   Let all the exceptions relating to this matter be overruled.

We come now, in the consideration of the grounds of appeal herein, to those relating to the merits.   In this connecton we will, first, pass upon the exceptions relating to the competency of certain testimony which was admitted by the Circuit Judge, notwithstanding its admission was objected to.   (a)

A leading exception in this matter of testimony improperly admitted was that of allowing testimony as to the contents of the returns of property for taxation made to the auditor for Union County in each of the years 1880, 1881, 1882, 1883, 1884, 1885, 1886, 1887, 1888, 1889, 1890, and 1891, by the defendant, A. A. Sarratt, in the absence of such returns, and without first proving that such original returns could not be produced by the county auditor for Union County, upon whom a *subpoena duces tecum* had been served by the plaintiff. We know that a great deal must be left with the Circuit Judge in requiring a party, who proposes to resort to secondary testimony of the contents of written papers, to excuse the absence of the papers themselves, and yet it is not safe to allow too much leniency in this regard. Take the present case as an example: Here it is contended that during each of the years of 1880 to 1891, inclusive, A. A. Sarratt made a return, under his oath, of his property, real and personal, in Union County to its auditor, and included in this return were any changes of his real estate; that such returns are, by law, in the custody of the county auditor in his office, which is public; that the county auditor only had bundled and labelled such returns from the year 1892 to 1897; that quite a large number of such returns were thrown upon the floor of a room adjoining the auditor's office, and that to assort these, so as to be able to tell whose returns were there, would take possibly two weeks time, and that the auditor had not been able to give more than four or five hours to searching for the returns of A. A. Sarratt amongst all the large number of such returns on the floor. The Circuit Judge held that this search of the county auditor was sufficient to open the doors for the introduction of secondary testimony as to the contents of the original returns made by A. A. Sarratt. It seems to us that such a course was open to objection. If it had been proved that such returns had been lost, or that it was impossible to obtain the original, a resort to secondary evidence would be allowed and justified, but not so when

these papers are in the custody of the auditor, and could be obtained by the employment of patient industry to a reasonable extent. It was plaintiff's duty to present these original returns. It seems to us, therefore, that the Circuit Judge was in error in admitting this secondary evidence. (b) It was error to allow W. B. DeLoach, Esq., to testify as to the contents of a letter he wrote to the sheriff of Orange County, in the State of New York, in the absence of the original, without establishing the loss of such letter. (c) It was not error to allow plaintiff to examine A. A. Sarratt as to his holdings of property in the years 1880-1895, inclusive. It was perfectly competent for the plaintiff, in the attack upon the transactions betwixt A. A. Sarratt and his wife, to have the said A. A. Sarratt examined most thoroughly as to what he was worth in 1880, and every other year to the date of the suit. (d) Also to examine him as to the fact of his making a return of property to the auditor * * but once having proved that such return was in writing, then the best evidence was the writing itself. (e) It was competent to submit hypothetical suggestions as to his returns, based upon what appeared in the auditor's duplicate; in other words, where fraud is charged in the management of lands and other property, the most rigid scrutiny into all the transactions during a certain period of time relevant to the fraud charged by the alleged owners of such property is admissible. (d) So, too, A. A. Sarratt could be examined as to his crops and his disposition of them during this suspected period of time. So, therefore, some of the exceptions on this line are sustained and some are overruled, as will be seen from the foregoing.

We will next examine into the findings of fact complained of in the exceptions to the Circuit Judge's decree. The 29th ground of appeal alleges error in the Circuit Judge for not finding that there was no sufficient evidence that, in 1880, A. A. Sarratt owned and possessed real estate in Union County of 765 acres. So far as this finding of fact is concerned, it is fraught with considerable importance to both

parties—for it relates to the Chulahoma tract of land, containing 430 acres.   So far as what is known as the King tract, consisting of 365 acres, there is no trouble, for certainly, in 1880, A. A. Sarratt did hold and possess this tract of land as his own property.   We cannot agree with the Circuit Judge as to the Chulahoma tract of land.   This land was the property of Mrs. M. P. Sarratt, having come to her as an heir at law of her deceased father, Dr. A. O. Walker, and we do not see that the proceedings in the partition of the lands of the said Dr. A. O. Walker in the Probate Court for Union County among the heirs at law of Dr. Walker; or the fact that the husband of A. A. Sarratt controlled the same; or the fact that A. A. Sarratt, after his marriage with Mrs. M. P. Sarratt, returned said tract as his property, ever divested Mrs. M. P. Sarratt of her title to said lands.   In the first place, great stress is laid by the Circuit Judge upon the form of the proceedings in the Probate Court.   Amongst other things, it might be said in answer to what is suggested in the Circuit decree on this subject, that strictly speaking there is no evidence that Mrs. Mary P. Sarratt had anything to do with these proceedings; for the directions to begin the proceedings in partition are given by A. A. Sarratt alone; his wife does not join in the said directions, and the pleadings nowhere show that Mrs. Sarratt took any part therein.   But we are not disposed to rest our views upon this consideration.   In the proceedings it appears to be the joint effort of A. A. Sarratt and his wife to have her share of the lands belonging to the estate of her deceased father divided or partitioned amongst his heirs at law, of whom Mrs. Sarratt is one.   Mrs. Sarratt was married in September, 1868—after the Constitution of 1868 had been adopted.   By that instrument, in section 8 of article 15, is was provided: "The real and personal property of a woman, held at the time of her marriage, or that which she may thereafter acquire, either by gift, grant, inheritance, devise, or otherwise, shall not be subject to levy and sale for her husband's debts, but shall be held as her separate prop-

erty, &c." It is stated in the case that Dr. A. O. Walker, the father of Mrs. Sarratt, died in 1862 or 1863. So that Mrs. Sarratt, before her marriage, was seized of all the estate in lands left by her father, along with her mother and brothers. She was seized *per my et per tont.* So when Mary Pacolet Walker, by her marriage with A. A. Sarratt, became M. P. Sarratt, she was seized in fee of said lands as her separate estate, unaffected by her marriage with Mr. Sarratt. The joining of A. A. Sarratt with his wife as a coplaintiff in the partition suit, was a courtesy paid him by the law. When the commissioners in partition referred to the tract of 430 acres being set apart to Mr. and Mrs. Sarratt, it was again a courtesy, so far as he was concerned. That the Court recognized this dealing with the husband as a ceremony only, see with what care it is provided that *Mrs. M. P. Sarratt alone* shall execute the mortgage to secure the excess over her share as an heir at law—and this is a proviso in the decree of partition. In construing a paper, regard must be had to all of its parts. When this is done, it will be readily seen that A. A. Sarratt was only formally referred to in the different steps. The DeLoachs—husband and wife— lived on a plantation adjoining this Chulahoma tract of land; they knew that it belonged to *Mrs. M. P. Sarratt,* for in their deeds to A. A. Sarratt for their plantation of 1,200 acres, they refer to this Chulahoma tract of land *as owned by Mrs. M. P. Sarratt,* and as one of the boundaries to their tract of 1,200 acres. In the complaint of the plaintiff, no direct reference is made to the Chulahoma tract of land; but it is said that Mr. A. A. Sarratt controlled the Chulahoma tract of land. Well, suppose he did. Was it not his duty to his wife to look after her property? Is this duty involved in his relation of husband? We apprehend that the inference that a husband owns his wife's lands, simply because he controls them, would not be regarded as a very strong support to the husband's title therein. And, lastly, it is suggested that he returned it as his own. Well, if the DeLoachs had been misled by this—if they had not known it from 1880—there

might be some little force given this position. There is absolutely no testimony that Mrs. M. P. Sarratt ever authorized A. A. Sarratt to return her lands as his, or that she knew that he had done so. But the witness, Thomas Littlejohn—one of Union's best citizens—speaking of this matter of husbands returning their wives' property as their own, said: "I returned my wife's property for taxation, and until recently I returned my wife's property in my own name. * * * We all did wrong in returning our wives' property as our own. At the time I returned my wife's property in my name, I did not know I was doing wrong. This property belonged to her by inheritance. I transferred to her—I transferred it to her on the tax books." We think, therefore, it was error in the Circuit Judge, to find as a fact that A. A. Sarratt owned this Chulahoma tract of land in 1880. He should have found that A. A. Sarratt only owned 365 acres of land in the year 1880, prior to his having bought the DeLoach's 1,200 acres.

Next we will examine the sufficiency of the testimony offered to warrant the finding of fact by the Circuit Judge that A. A. Sarratt had represented to the auditor of Union County that he had conveyed any of the lands belonging to himself or his wife, or during the period from 1880 to 1893, that A. A. Sarratt authorized any entries in the tax duplicate of Union County indicating a transfer of land to his wife; or that even if A. A. Sarratt did authorize such entries, they were not proof that such lands were owned by A. A. Sarratt, or that he conveyed them to his wife. This statement embodies the 31, 32, 33 grounds of appeal. The great effort in the tax department of the State is to secure the payment of taxes by each piece of property not exempt from taxation by the State Constitution, and in order to accomplish this, in the blanks, upon which individual taxpayers make a return each year of their taxable property, there is printed a question calling for any change in the landed property returned by the taxpayers, either any that he has gained by purchase or otherwise, or

that should no longer be retained on the tax books charged to him, and if not to be any longer charged to him, in what name shall the same be charged. This is no part of the registry laws of the State. It is intended as a guide to the tax gatherers. A., who has sold 500 acres to B., may return the same, but B. may neglect to state in his return that he has bought from A. these 500 acres. The auditor will, therefore, reduce the acreage charged to A. by 500 acres, but will add to the acreage of B. the 500 acres, although B. did not return the same. This being so, it is very evident that the tax returns as prepared by the auditor ought not to be received as evidence against the individual taxpayer, for such work of the auditor may, or may not, be based upon the return of such taxpayer. Even, however, if it were proper to receive such tax duplicate as made up by the county auditor, still it would be open to explanation. Previously in this opinion reference has been made to the habit of husbands including in their returns the property of the wife; such being so, the taxpayer ought to be allowed to explain. These exceptions are well taken.

We will next take up the exceptions to the findings of fact and conclusions of law of the Circuit Judge in relation to each of the tracts of land referred to in the complaint and answers. (a) As to the Chulahoma tract of land, originally containing 430 acres and now containing 430— 98,332 *acres.* We have already overruled the finding of fact of the Circuit Judge that this was not owned by Mrs. M. P. Sarratt, but by her husband. We have held that the facts that in the proceedings in the Probate Court in 1874, it was referred to as being set apart to Mr. and Mrs. Sarratt, or that it was controlled by Mr. Sarratt, or that he returned it for taxation in his own name, could not divest Mrs. Sarratt of her title by inheritance from her father. And we may add that the fact that A. A. Sarratt sold 98 acres from the Chulahoma tract to the brother of his wife—Mr. S. A. Walker—made a deed to him therefor in his own name, and received the purchase money, $2,000,

which he placed in bank in his own name, and made disposition thereof at his own will, does not divest Mrs. Sarratt of her title to the remaining 332 acres of the Chulahoma tract.

The Circuit Judge, as a conclusion of law, determined that this tract of land, under the proceedings in the Probate Court for the partition of the lands of the late Dr. A. O. Walker amongst his heirs at law, vested the title thereto in A. A. Sarratt and M. P. Sarratt, his wife, by *entirety*, whereby, upon the death of Mrs. M. P. Sarratt, the survivor, A. A. Sarratt, was vested with the entire fee. There is no doubt of the existence of such an estate—*that of entirety*. It was recognized and enforced by this Court in the case of *Railway Co.* v. *Scott*, 38 S. C., 34. It arises when there is a moiety of title in the husband and wife, which moiety the law, by reason of the oneness, so to speak, of husband and wife, decides shall carry the entire title to the survivor of the husband and wife, but we have failed to discover where A. A. Sarratt was ever clothed with any title to the Chulahoma land; such being the case, the doctrine of entirety has no application. There were no facts and there was no law established in this case which will destroy Mrs. M. P. Sarratt's title to this Chulahoma tract of land.

(b) As to the *Woolbright* tract of land, containing 295 acres, purchased by Mrs. M. P. Sarratt in November, 1888, to which she received title from the master of Union County —James Munro, Esq.—executing to him her bond and mortgage to secure the credit portion. In the year 1883 or 1886, A. A. Sarratt loaned, say $1,000, to one Kendrick, who executed his mortgage on the Woolbright tract of land to secure said loan; Mr. Nicholson, a banker at Union, also had a mortgage on this land—he began an action to foreclose, making Kendrick and A. A. Sarratt parties. The master sold the land, November, 1888, for part cash and part credit, and Mrs. M. P. Sarratt became the purchaser, executing her bond and mortgage. Mr. Sarratt made the cash payment for his wife, as he claimed, with the funds belonging to her which he, A. A. Sarratt, had re-

ceived from S. A. Walker in payment of the 98 acres of land sold to Walker off of the Chulahoma tract. The Circuit Judge held that A. A. Sarratt at that time (November, 1888,) was insolvent, was consciously insolvent; that his wife knew of such insolvency; that A. A. Sarratt *dared* not take title to the Woolbright tract of land in his own name, because he knew that the DeLoaches were pressing for their money, which was due—and $20,000 additional would soon be due; that this taking of title in Mrs. M. P. Sarratt's name was a naked effort to circumvent and defraud the De- Loaches; that both Sarratt and his wife consciously lent themselves to the perpetration of this fraud upon the De- Loaches; that it was a pretense and a sham, this claiming by A. A. Sarratt that the cash portion paid the master on the Woolbright purchase was from the money he held belonging to his wife. Now if the conclusion of the Circuit Judge that the Chulahoma tract of land was owned by A. A. Sarratt and not by his wife, Mrs. M. P. Sarratt, were correct, then the 98 acres sold to S. A. Walker for $2,000, was the property of A. A. Sarratt and not that of his wife. Hence, under that supposition, the $2,000 was A. A. Sarratt's; and for him to put it in the purchase of the Woolbright tract of land, in part, and have the titles put in his wife, while he owed large sums of money, would have been either an actual or moral fraud on the one side, or a constructive or legal fraud on the other side, depending upon the intention of the parties thereto; but we have just held that the 98 acres sold to S. A. Walker off of the Chulahoma tract of land was the property, at the time of such sale, of Mrs. M. P. Sarratt. Therefore, when A. A. Sarratt received the $2,000 as pur- chase money, he held the same for his wife—there being no proof of a gift to him of that money by his wife; and it made no difference where he placed it, whether as a deposit in a bank, or as a loan to other parties, or in the purchase of prop- erty, as between himself and his wife—it was her money. Therefore, if he paid a part of that money, with the consent of his wife, in the partial payment of his wife's purchase of

the Woolbright tract of land, it was a legitimate transaction. We cannot perceive upon what ground the Circuit Judge places his conclusion that Mrs. M. P. Sarratt either knew of her husband's insolvency, or that she lent herself to the scheme to practice a fraud upon the DeLoaches. Certainly there is not a word of the testimony in the whole case which indicates that Mrs. Sarratt knew one thing of Mr. A. A. Sarratt's condition financially. On the contrary, it was charged in the complaint that she knew of Sarratt's insolvency at that time, and also that she lent herself to the perpetration of this fraud upon the DeLoaches; but her sworn answer is direct, positive and emphatic in its denial of such charges in the complaint. So, to begin with, we have this positive denial in the sworn answer. Then, A. A. Sarratt so swears in his answer. Also, A. A. Sarratt so testifies. Where is there any one who rises up to deny these sworn denials of these charges? A Court must be governed by the testimony. Granted that a Chancellor may, as a jury sometimes does, refuse to believe a witness—where is there any attack, anywhere, upon the purity of soul of this wife and mother, Mrs. M. P. Sarratt? And every witness who is sworn testifies to the high character for honesty and truth, which is borne by A. A. Sarratt. It would be a bold conclusion to say that either Mr. and Mrs. Sarratt could not be believed, and, as we understand it, the Circuit Judge bases his findings and conclusions upon the fact—as he found it—that A. A. Sarratt was the owner of the $2,000, received by him from S. A. Walker for the 98 acres of land. We hold, therefore, that the plaintiff has no claim upon this Woolbright tract of land. Besides, we are not so sure but that as to this tract of land, the Woolbright tract, the defendant's plea of the statute of limitations, in that six years have elapsed from the filing of the complaint, on the 26th day of March, 1896, to the date when the deed to this tract of land from the master was recorded, to wit: December, 1889, should have been sustained. The charge of the complaint is an actual, moral fraud. There is no charge in the complaint

that the same has been first discovered by the plaintiff within the six years, &c.   This is not the case of a legal or constructive fraud.   The decisions, *Suber* v. *Chandler,* 18 S. C., 526; *Miller* v. *Hughes,* 33 S. C., 538; and *Meinhard* v. *Youngblood,* 37 S. C., 238, go very far to support the doctrine that in the absence of a denial of knowledge until within six years before suit commenced, a complaint to set aside actual, moral fraud must be begun within six years of the commission of the alleged fraud, to avoid the statute of limitations.

(c) As to 185 7-10 acres purchased by Mrs. M. P. Sarratt when A. A. Sarratt's 1,200 acres of land, bought by him of the DeLoaches, were sold by the master, under the decree in foreclosure against A. A. Sarratt, on the 4th January, 1892. The Circuit Judge admits that at first he was doubtful whether the facts that in the case between the DeLoaches *v.* A. A. Sarratt, the master had made his report in writing of the sale of 185 7-10 acres to Mrs. M. P. Sarratt, at the price of $2,050; therefore and thereafter, on motion of the attorneys for the DeLoaches, this sale, so reported by the master, was confirmed, would not estop the present plaintiff, Mrs. Elizabeth DeLoach, from showing that such sale was really made to A. A. Sarratt and not to Mrs. M. P. Sarratt, and that the money paid, as being derived from a loan for that purpose to Mrs. Sarratt by one Daggett, was really the money of A. A. Sarratt.   The Circuit Judge finally held the plaintiff was not so estopped, and we agree with him in that conclusion.   This is an allegation of actual fraud, and the law and equity allow much, very much, to be done in order to uncover that business *cancer*, if the word will be pardoned.   When this investigation is gone into, what do we find?   That A. A. Sarratt stood at the sale of these 1,200 acres of land and bid upon each of the six tracts into which the 1,200 acres had been divided—the DeLoaches bidding against him.   They bid off five of the six tracts, and Sarratt bid off this one.   He consulted his attorney, Maj. William Munro, telling his

attorney that he knew this 185 7-10 acres to be fully worth the $2,050, he had bid it off for, and that if he could borrow the money, he would like to own it.　His attorney told him that it would be useless for him to borrow money to pay for this land, for as soon as he paid for it, the DeLoaches would sell it under their judgment for the deficiency of their debt. He then consulted his wife, Mrs. M. P. Sarratt, and she agreed to receive a surrender of his bid and take the title, borrowing the money from one Daggett to make the cash payment.　There is no testimony that Mr. Daggett did not lend her this money.　In fact, there is not a scintilla of testimony in contradiction of the sworn answer of Mrs. M. P. Sarratt and to that of her husband, or of his testimony on this point.　Legally she was competent to buy this land; by the Constitution, she was made fully competent to do so.　The DeLoaches have been paid for this land in full once, they should not be allowed to be twice paid, unless A. A. Sarratt is, by this means, hiding his property from the judgment they hold against him.　We see no evidence of any such fraud.

(d)　We will next inquire into the King tract of land, containing 365 acres, and the Thompson Mill place, containing from 90 to 98 acres.　It will be recalled that this King tract was purchased by A. A. Sarratt in 1879 or 1880; that he bargained it and conveyed it to John B. Foster in 1883; but that Foster not being able to pay for it, reconveyed it to A. A. Sarratt in the year 1885 or 1886. Also, that A. A. Sarratt held a mortgage on one moiety of the Thompson Mill tract, executed by John R. Jefferies, and also held a mortgage on the other moiety of said Thompson Mill tract, which was executed by one Kendrick—both mortgages had the condition broken, were foreclosed, and at the foreclosure sale, A. A. Sarratt became the purchaser in 1889. Now in April, 1890, A. A. Sarratt, being already indebted to one J. J. Magness in the sum of $1,000, induced said Magness to increase his debt to $1,500, and also become his indorser for $3,000 to one A. N. Wood, by giving to said

Magness a mortgage on the King tract of land and the Thompson Mill tract, to secure the $1,500, and also to secure him as his surety on the $3,000 loaned to A. A. Sarratt by A. N. Wood. Both these debts matured in 1891 (twelve months from April, 1890), and the mortgage was recorded. Default was made on the $3,000 debt, but the $1,500 was paid before maturity. In the fall of the year 1891, A. N. Wood foreclosed his mortgage, which was a Scottish mortgage—that is, a mortgage with a power of attorney to mortgagee to sell upon default. At such sale, Mrs. Mary P. Sarratt became the purchaser of both tracts of land, at the price of $3,000, having borrowed the $3,000 from her brother, William F. Walker (who it seems, from the testimony, was a man of means), and gave him a mortgage on her lands to secure such loan. The Circuit Judge lays stress upon the fact that J. J. Magness was a brother-in-law of A. A. Sarratt. What is more natural than for a kinsman to help a man when he needs help? Frequently such a source is all that a man in trouble has. A. A. Sarratt was fortunate in having such a well-to-do kinsman, as Mrs. M. P. Sarratt was in having an unmarried brother who, well off in this world's goods, was willing to lend her money. It is very evident, though, that neither kinsman went very far with either Mr. or Mrs. Sarratt without the security of a mortgage. We cannot view these matters as did the Circuit Judge.

(e) We will next consider the findings of fact and conclusions of law of the Circuit Judge as to the 1,307 acres of land said to have been conveyed by A. A. Sarratt to his wife, as follows: 665 *acres* in the year 1889, and 642 *acres* in the year 1891—such deeds being unrecorded. The language of the decree is as follows: "As to the two unrecorded deeds, executed by A. A. Sarratt to his wife some time in the years 1889 and 1891, respectively, notice was duly served upon him to produce them. As executor of his wife, he is the custodian of said papers, but failed to produce them. *The entries made in the tax duplicates for Union County, by authority from statements in the return*

*made by Sarratt, show that such conveyances were made"*
(italics ours). "These conveyances, which were voluntary
and entirely without consideration, made at a time when Mr.
Sarratt was overwhelmingly in debt, and hopelessly insol-
vent, were certainly, as soon as J. E. and Elizabeth DeLoach
had exhausted their legal remedy, by the return of *'nulla
bona'* to their executions, absolutely void and fraudulent as
to them, both at common law and under the Statute of Eliza-
beth, and must be vacated and set aside. *Suber* v. *Chand-
ler,* 18 S. C. But if the deeds had been executed upon the
consideration of a *bona fide* indebtedness from Mr. Sarratt
to his wife, that could not have given validity to the deeds,
in view of the established fact that the purpose of the deeds
was to shield the property of A. A. Sarratt from his cred-
itors, and thereby defeat their just demands. *Younger* v.
*Massey,* 37 S. C., 120; *Lowery* v. *Pinson,* 2 Bailey, 328."
We have given the pleadings, testimony, decree and argu-
ments in this cause the very closest scrutiny, in order that
we might correctly apprehend the issues herein involved, and
the testimony adduced to elucidate such issues; but we must
say, in rising from their study, we are unable to understand
upon what grounds such a conclusion of the Circuit Judge is
based, for it is our duty to remark that there is nothing in
the testimony of a single witness as to these two supposed
tracts of land—one alleged to have been conveyed in the year
1889 and the other in the year 1891. No witness has ever
seen such tracts of land. No trace has ever been given
whereby it might be inferred that A. A. Sarratt had ever
bought or inherited such tracts of land. No one has ever
seen or heard of a deed to said lands from A. A. Sarratt to
Mrs. M. P. Sarratt. The only ground upon which the Cir-
cuit Judge can justify his inference that two such deeds—
one for 665 acres in 1889 and one for 642 acres in 1891—
were ever made, is that the auditor of Union County, in
making up his tax duplicate for the years 1889 and 1891,
refers to such an acreage in land as coming from A. A. Sar-
ratt to Mrs. M. P. Sarratt, and the Circuit Judge infers that

19—55

such language must be used in the original returns made by
A. A. Sarratt for those years 1889 and 1891, respectively.
We have hereinbefore held that the Circuit Judge was in
error in resorting to such secondary evidence as to the con-
tents of the returns for taxation made by A. A. Sarratt, in
view of the fact that due diligence had not been made in
securing such original returns; for it was in testimony by
the auditor himself that he had been too busy with his official
duties to give more than three or four hours search among
the returns which were in his possession, but were lying in
mingled confusion on the floor of one of the rooms of his
office as auditor. How the Circuit Judge was able to an-
nounce that such deeds were voluntary and without consid-
eration, when he never saw the deeds themselves, or heard
any testimony as to their contents, we are unable to see.

Lastly, we will consider the exception relating to the find-
ings of fact and conclusions of law by the Circuit Judge,
touching the personal property mortgaged to Carroll and
Carpenter in 1891, to secure advances not to exceed the sum
of $2,500, to enable A. A. Sarratt to conduct his planting
operations. The mortgagees in their testimony
plainly announced that they knew of the DeLoach
and wife's action against Sarratt; they saw that he
was in trouble, and, therefore, they were unwilling to make
him any advances in provisions and supplies unless he
secured them by a mortgage on his personal property. Was
this not a business-like conclusion? It seems so to us. It
was no part of the duty of this firm to advance supplies to
Sarratt to enable him to make money for the DeLoaches, or
any one else. They had a right to demand a mortgage of
this personal property as a condition precedent to the making
of such advances. Their mortgage was duly recorded.
When Mr. Sarratt failed to pay his debt to them, they had
the right, in the first place, to take the property, as it was per-
sonal—for the title was in them, after condition broken. But
they acted very fairly; they advertised the sale of the prop-
erty. Many people gathered to the sale, but no one would

bid. Whose fault was this? Certainly not that of Carroll and Carpenter or Sarratt, so far as the testimony discloses the conduct of these parties. The result was that there being no bidders, Carroll and Carpenter, as mortgagees, left the property in the hands of A. A. Sarratt to sell. He did sell the property, and paid them the balance of $600 due them. Of course, plaintiff, if she should so desire, has the right to have an accounting with the estate of A. A. Sarratt as to the balance of the personal property, after paying the debts of Carroll and Carpenter.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed.

MR. JUSTICE GARY concurs in the result.

*Remittitur* having been stayed on petition for rehearing, the Court, on June 3, 1899, made the following order:

After a careful consideration of this petition, we are unable to discover that any material fact or principle of law has either been overlooked or disregarded. For while it is true that the question as to whether the deeds in question were void under the assignment act is not, in terms, specially mentioned in the opinion, yet it was not, in fact, overlooked, but was duly considered, and the conclusion was reached that the position taken by respondent in respect to this matter could not be sustained; and hence the exception raising this question, along with the other exceptions, was in express terms overruled. There is, therefore, no ground upon which this petition can be granted.

It is, therefore, ordered, that the petition be dismissed, and the stay of the *remittitur* heretofore granted be revoked.