## VARN *v.* VARN.

1. A grantor, in consideration of love and affection, conveyed a tract of land to six grantees, "their executors, administrators, and assigns, with a reserve of the right of said lands to" the father of these grantees "during his natural life and that of his wife," with a warranty on the part of said grantor, his heirs, executors, and assigns, to said grantees against the grantor and "his executors and administrators." *Held,* that the grantees took only an estate for life, and upon the death of

some of them, their interests terminated, and a purchaser of the interests of some of the heirs of the grantor was entitled to have a partition between himself and the other heirs of grantor and the surviving grantees who still held for life their original interests under the said deed.

2. A consent order is not appealable.

Before WALLACE, J., Barnwell, March, 1889.

This was an action by Aaron G. Varn against Miles B. Varn and others, commenced in June, 1887. The case depended mainly upon the construction of the following deed:

"Know all men by these presents, that I, W. M. Chitty, of State and district aforesaid. for natural love and affection which I bear to Robert A. Varn, Carson W. Varn, John W. Varn, Miles B. Varn, Curtis M. Varn, and Henry C. Varn, of State of South Carolina, Barnwell District, have given and granted and by these presents do give and grant unto the said * * * their executors, administrators, and assigns, all that plantation or tract of land containing two hundred and sixty-three acres, more or less, with a reserve of the right of said lands to Isaac Varn during his natural life and that of his wife, Louisa A. Varn, situate, lying, and being * * * to have and to hold the said tract of land unto them, the said * * * their executors, administrators, and assigns forever ; and I, the said W. M. Chitty, for myself, my heirs, executors, and administrators, the said tract of land unto the said * * * their executors and administrators and assigns against the claim of me, the said W. M. Chitty, my executors and administrators, shall and will warrant and forever defend. In witness whereof I have hereunto set my hand and seal this 22nd day of November, in the year of our Lord one thousand eight hundred and fifty."

The Circuit decree was as follows :

There can be no doubt that the deed under consideration conveys only a life estate. The word "heirs" is not used in the deed, either in the body or in the *habendum* and *tenendum* clause. The grantor uses the same words in both places, and the word "heirs" is conspicuous by its absence from the positions where it should be found if the grantor had intended to pass the fee. No authorities need be cited to sustain a proposition so long and well established as that the word "heirs" is necessary to convey the fee by deed. Without words of inheritance a life estate only is

passed.   This is the fundamental doctrine of the text book, and sustained by our own State decisions, so that under this deed Robert A., Carson W., John W., Miles B., Curtis M., and Henry C. Varn took life estates as joint tenants or tenants in common in the land.   Four of these life tenants are dead; and Isaac and Louisiana Varn, their parents, to whom a life estate was reserved out of the estates given to their children, are also dead. Miles B. and John W. are the only survivors. and Miles B. is in the exclusive possession of the land, using it for his sole benefit. Nothing appears in the "Case" as to what has become of John W.'s interest.   He is a party to the action, but does not answer.   But he is alive and the plaintiff does not claim to have acquired his interest.

The estates, therefore, which were held by the four life tenants, who are now dead, is the question before us.   Who has the right to the enjoyment of their interests now?   There can be no doubt that under the construction the court has given to the deed, that ultimately the fee in the land goes back to the heirs of W. M. Chitty, and upon his death it immediately vested in his heirs. The right to the enjoyment of the fee by them was only postponed till these life estates fell in.   *Hicks* v. *Pegues*, 4 Rich. Eq., 413; *Glover* v. *Harris*, *Ibid.*, 25.   But have they that right as long as any one of the life tenants survives?   Does the interest of each one deceased go to accumulate and enlarge the estate of the survivors, or does it cease to exist, and at once entitle those who hold the fee to enter upon the enjoyment of it *pro tanto?*   The life estate in the land was given to these six parties as joint tenants or tenants in common.   If they were all alive to day, they could partition it and each enjoy his share separately.   Any or either one of them could enforce such a partition.   Had they done so and then died, what would have become of the shares or portions of the deceased?   It could not have been transmitted to his or their heirs, and the life estate having fallen in, those who held the fee would be instantly entitled to enter and enjoy it. The fact that they had not partitioned the land cannot alter the principle. (See *Gen. Stat.*, § 1829.)   And since the act of 1791 the interests of deceased joint tenants do not go to the survivors, but is distributable among his or their heirs.   (*Gen. Stat.*, §

1851.) And as in this case the interests held by the joint tenants run only for life, their deaths terminated the estates. There was nothing to descend to their heirs for distribution, and those who held the fee had then the right to enter, as the only thing which postponed their right to the enjoyment of it had been removed.

Nor are the heirs of Chitty estopped by the warranty in the deed. The warranty goes no further than the estate granted. They would be estopped from trying to deprive any of the life tenants from his proportionate share of this life estate, but not beyond that. This the plaintiff and other heirs of Chitty are not endeavoring in this action to do. Chitty, the grantor, died leaving five direct heirs. The plaintiff, A. G. Varn, by purchase has acquired the interest in fee of all these, except five of the ten children of Katie Beard, and is therefore entitled to the fee in forty-five fiftieths of the tract of land described in the deed, and Wm. Beard, Elliott Beard, Mrs. Berry Brabham, —— Beard, and Thomas Beard (the last two infants), the children of Katie Beard, whose interests the plaintiff has not purchased, are entitled in fee to one fiftieth each of the said land. But two of the life tenants, Miles B. and John W. Varn, still survive. Each of these is entitled to one sixth of the land for the time of his natural life, and after the same to go in fee to the plaintiff, A. G. Varn, and the five children of Katie Beard above named, and in the proportion as above stated. The plaintiff and the above named children of Katie Beard are entitled now to the enjoyment of four-sixths of said lands in the proportion as above stated in severalty, and the said Miles B. and John W. Varn are entitled to one-sixth then of each for the time of their respective lives.

It is therefore ordered, adjudged, and decreed, that the plaintiff is entitled to partition of the lands as prayed for in the complaint, and that a writ of partition do issue out of this court, &c.

*Messrs. Skinner & Williams*, for appellant.

*Mr. Laurie T. Izlar*, contra.

February 13, 1890. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   The "Case" herein is so meagre, and so many confused statements therein, growing out perhaps of the misuse of words in the printing, that we have found it very difficult both to get the facts and to obtain a clear idea of the legal errors intended to be alleged.   The cause, however, as far as we have been able to understand it, seems to be of the following character:

One W. M. Chitty, in November, 1850, executed a deed, in which, "for natural love and affection," he conveyed a tract of land situated in Barnwell County, containing some 263 acres, to Robert A. Varn, Casson W. Varn, John W. Varn, Miles B. Varn, Curtis M. Varn, and Henry C. Varn, their executors, administrators, and assigns, "with a reserve of the right of said lands to Isaac Varn during his natural life and that of his wife, Louisa A. Varn" (the last two being the father and mother of the grantees above named), and the said Chitty, for himself, his heirs, executors, administrators, and assigns, forever warranted the said tract of land to said grantees, &c., &c., against himself, "his executors and administrators."   Soon after the execution of this deed, Chitty, the grantor, died, leaving as his heirs at law several children, one of whom, to wit, Mary Fields, subsequently died, leaving as her heirs at law several children.   Henry Varn, one of the grantees above, died in 1862, unmarried and childless.   Robert A. Varn, another of said grantees, died in 1865, unmarried and childless.   Casson W. Varn, another of the said grantees, died also in 1865, unmarried and childless.   Curtis M. Varn, another of said grantees, died in 1885, leaving a widow and four children as his heirs.   Isaac Varn, the father, died in 1878, and Louisa, the mother, died in 1885, so that only two of the original grantees were left—John W. Varn and Miles B. Varn, the latter of whom is in possession of the land above mentioned.

Some time after the death of W. M. Chitty, the plaintiff, respondent, purchased from his heirs their interest in said lands, with the exception of the interest of William Beard, Elliott Beard, Mrs. Brabham,        Beard, and        Beard, and in 1887 he commenced the action below for partition, claiming that he was entitled to the fee to the extent of the interest conveyed to him by the heirs of W. M. Chitty, and that as tenant

6 -32

in common with John W. and Miles B. Varn, who had only a life estate, and with the Beard children, who held a fee to the extent of their interests, and which he had not purchased, he was entitled to said partition.   It is stated in an agreed statement for the purpose of this appeal, that all of the defendants, except Miles B. Varn, answered, joining in the prayer of the plaintiff for partition, except John W. Varn, who made default.   But there is no answer in the record from any one of the defendants. It is further stated in appellant's argument, that Miles B. Varn answered with a general "denial, claiming title, *laches*, and estoppel."   It is also stated in respondent's argument, that Miles B. Varn answered with a "general denial, claiming exclusive title, and for a second defence set up some equitable allegations in the nature of a family settlement, but that he never attempted to sustain either of his defences by any proof whatever."   As we have said, however, this answer does not appear in the "Case," and we have no means of knowing exactly what defence it contained.

The case came up first before Judge Hudson, who made an order, on "reading and filing the pleadings, that an issue be framed and referred to the jury, in which the plaintiff and such of the defendants as joined in the prayer of the plaintiffs, should be the actors to try the question whether the actors had title to the land described in the complaint.   He further ordered that a certain action then pending between one Anna Varn and Miles B. Varn for the partition of the same land, should be stayed until the question of title involved in this action might be determined. This issue was not tried at that term of the court, and the case afterwards came before his honor, Judge Fraser, who, by consent of all the counsel on both sides, substituted another order for trial by jury for the order *supra* of Judge Hudson, which, being submitted to the jury as stated by counsel of respondent, though these facts do not appear fully in the "Case," was finally withdrawn, Judge Fraser announcing that under the testimony he would have to instruct the jury to find for the plaintiff.   If, however, the defendants desired to produce evidence on his equitable defence, he would refer the case to the master for that purpose.   This was consented to, and an order to that end was made.   The master thereafter took the testimony and reported it.

At a subsequent term the case came up before his honor, Judge Wallace, who, it seems, considered and adjudged the rights of the parties under the deed of W. M. Chitty only, holding that the grantees under that deed took a life estate only, the fee of the land remaining in the said W. M. Chitty, and upon his death intestate descending to his children and heirs at law, and the plaintiff having purchased the interest of the said heirs, or at least of all of them except those mentioned above, he was entitled to have partition as against Miles B. Varn and John W. Varn, the surviving grantees for life, in the proportion mentioned in his decree. From this judgment Miles B. Varn has appealed upon exceptions as follows: The defendant, Miles B. Varn, prefers the following charges of error in the proceedings herein, to which he excepts on appeal:

1. The order of Judge Fraser of December 1, 1887, reversed the order of Judge Hudson of July 15, 1887, whereby this cause had been properly referred to a jury to decide the issue of title made by the pleadings.

2. Judge Fraser's order referred this cause, containing questions of title and other matters proper for a jury, to the master.

3. That the order also intimates that by an argument [*sic*] of counsel the order of Judge Hudson was rescinded, but the argument only appears to be an endeavor to carry out Judge Hudson's order.

4. Judge Fraser would not hear an application of counsel to dismiss the complaint, which motion he should have heard and sustained on the grounds of insufficiency, inconsistency, and immorality apparent in the complaint.

5. As to Judge Wallace's decree of 11th of April, 1889, it should have dismissed the complaint for the causes last above mentioned.

6. It misconstrues the defendant's answer and withholds from it any qualification of the case.

7. It holds that the evidence taken sustains the complaint, whereas in the particulars it so finds, the evidence negatives the conclusion.

8. It holds that the interest of W. M. Chitty in the land, and

of Katie Beard derived from him, might be partitioned in this suit without administration on either estate.

9. It holds that the interest of the minor children of Katie Beard might be adjudicated herein, when it does not appear that any person was served with the summons in their behalf.

10. It holds that Mary Stanley's interest in the lands was duly conveyed to the plaintiff, while the paper so purporting to do so is without her seal.

11. It holds that L. M. All's interest was duly conveyed to the plaintiff, while the deed so purporting was proved to have been executed before one witness only.

12. It misconstrues the deed of W. M. Chitty, and holds that his heirs had an estate in the lands which they could convey to the plaintiff, and had so conveyed, whereas said heirs had no such estate in the lands in question, and could convey no recoverable interest therein to the plaintiff.

13. Upon the whole case the decree should have been in favor of the defendant and against the plaintiff.

14. Should their honors, the Justices of the Supreme Court, find that there was a descendable interest in Curtis M. Varn and other deceased grantees under the Chitty deed, the defendant submits that no part of such interest should be allowed the plaintiff on account of the estoppels set up in the answer, the undetermined suit of Curtis M. Varn's heirs against this defendant, and the fact that no one of said interests is represented by an executor or administrator.

And we find the following a part of the "Case," to wit:

AGREEMENT.—Varn v. Varn. We agree that this case shall be heard in the Supreme Court on the following pleadings and statement: 1. Complaint. 2. Answer of Miles B. Varn. 3. Master's report. 4. Decree of Judge Wallace. 5. Order of Judge Fraser. 6. Order of Judge Hudson. 7. Exceptions of M. B. Varn. 8. This agreement.

"STATEMENT.—This cause was heard by Judge Wallace, spring term, 1889. The only questions raised and argued at the hearing were those arising on the effect and construction of the Chitty deed set out in the complaint. The testimony was not read by consent, and the only portion referred to was that in reference to

the Louisa All deed. All of the defendants, except 'M. B., answered, joining in the prayer of the complaint, except John W., who did not answer. No testimony was offered on behalf of the defendants. No exception was taken to the orders of Judges Fraser and Hudson until after the decree of Judge Wallace." (Signed by the attorneys.)

The main exception to the decree of Judge Wallace is the 12th, in which error is alleged to the construction which he gave to the deed of W. M. Chitty, as to the rights of the parties thereunder. Indeed, the construction of this deed, as per the statement *supra*, and its effect upon the interests of the parties, seems to have been the only questions raised and discussed before Judge Wallace. The testimony taken by the master was not read, nor was any fact found by him, but he simply adjudged the question raised as stated above. We concur in the construction given by Judge Wallace. The tract of land in controversy was conveyed by *deed* to the grantees therein named by Chitty. There are no words of inheritance therein indicating a longer estate than one for life, which is absolutely necessary in a deed when a larger estate is intended to be conveyed. Nor are there any words therein limiting the estate to an interest less than life. Under such circumstances the principle is elementary that a life estate is conveyed. W. M. Chitty being seized of the fee at the time of the execution of this deed, and having carved out in favor of the grantees only a life estate, of course the fee remained in him, subject to the enjoyment of the life estate by the said grantees, and upon his death this fee descended to his heirs. The plaintiff bought this fee from most of the heirs; and as to the grantees for life who were dead, his fee had been disencumbered of their life interest, but this did not enlarge the interests of the surviving life tenants. At the execution of the deed there were six of these, holding the land as joint tenants, each being entitled to a sixth, and, as Judge Wallace said, they could have obtained partition, so that each could have enjoyed his sixth in severalty, in which event their sixth, in case of death, would have gone at once to the owners of the fee, the plaintiff and the other defendants whose interests the plaintiff had not purchased. We cannot see that the fact that a partition had not taken place between the tenants for life can make any

difference. The death of each one that died severed the joint tenancy, and disencumbered the fee to the extent of the interest of the deceased, to wit, one-sixth (*Gen. Stat.*, § 1851; act of 1791), leaving the survivors still entitled to their one-sixth for life, but no more, and the owners of the fee entitled at once to the remainder of the land, which could only be enjoyed by a partition.

As to exceptions 1, 2, 3, and 4, complaining of the order of Judge Fraser rescinding the order of Judge Hudson, requiring an issue to be made for the jury on the question of title. The "Case" does not fully disclose what was really done, but in any event, it seems that what was done was done by the consent of the attorneys on both sides. Judge Fraser, in the beginning of his order, or at least in the one printed in the "Case," states that on reading and filing the pleadings and proceedings herein and an argument (intended evidently for agreement), signed by all of the attorneys in the cause, which agreement, he further states, had been made as a substitute for Judge Hudson's order. He then ordered, &c., &c. It seems that the substituted order and the order of reference to the master to take testimony upon the equitable defence of defendant, was by consent. Such being the fact, it is too late now to attack these orders, even if they were otherwise vulnerable, of which, however, we see no ground.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.