### GEORGIA, &c., RAILWAY COMPANY v. SCOTT.

1. RIGHT OF WAY—OWNER OF LAND.—*It would seem* that the word "owner," as used in the statute providing for the obtaining of a right of way for a railroad over the lands on its route, was intended to mean the person who represented the land.

2. IBID.—IBID.—EXECUTED USE.—A devise was to A, in trust for the use of W and his wife and the survivor, for life, not subject to their debts, and after their death to be equally divided between the children of W. The testator died after the Constitution of 1868 took effect. W took possession and executed to a railroad company a release of a right of way over this land, after which A and W's wife and her children filed a petition to obtain compensation for the right of way so taken. Under action to enjoin this proceeding, *held*, that the statute executed the use in W and his wife for life, and that the release executed by W was valid for the joint lives of himself and wife.

3. TENANTS BY ENTIRETIES.—Where an estate is devised to husband and wife for their joint lives and the life of the survivor, do they take as joint tenants, or as tenants of the entirety?

4. PETITION FOR REHEARING refused.

Before NORTON, J., Abbeville, October, 1890.

This was an action by the Georgia, Carolina, and Northern Railway Company against Rebecca Scott and others, commenced July 28, 1890, to enjoin proceedings instituted by defendants in April, 1890, to obtain compensation for a right of way taken by plaintiff under releases executed by William Scott in September, 1889, and January, 1890.

*Mr. L. W. Perrin,* for appellant.

*Messrs. Graydon & Graydon,* contra.

November 21, 1892. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. It seems that the plaintiff com-

pany, in locating their railroad through Abbeville County, found William Scott, with his wife and family, living upon a tract of land (360 acres), over which they desired to locate their road. Scott, as the head of the family, was in full possession of the premises, renting it, and in every way controlling it, and claiming to be the sole "owner" thereof. Scott desired that the railroad should be located through the land, and executed to the company the right of way over it—indeed, two—the latter (July, 1890), on account of some change which was proposed in the location of the track, was in consideration of ten dollars, which was paid. The road was built, and is now in operation; but Mrs. Elizabeth Scott, the wife of William Scott, and her children, together with one Samuel A. Tolbert, as trustee, ignoring and disregarding the aforesaid releases of the right of way executed by William Scott, instituted proceedings to obtain compensation for the aforesaid right of way, under the law provided for cases of omission or refusal to consent to the right of way. Thereupon this action was commenced by the company to enjoin that proceeding.

The cause was heard by his honor, Judge Norton. There was no parol testimony of consequence, but he decided the case upon the construction and effect of the will of Mrs. Elizabeth Scott, deceased, the mother of William Scott, under which the land in question was held by the Scotts. The devise was as follows: "I will and devise my Curl-tail plantation, containing 360 acres, to Samuel A. Tolbert, trustee, in trust for the use, benefit, and enjoyment of my son, William Scott, and his wife Rebecca, and the survivors of either of them, during their natural life, in no wise to be subject to the debts or contracts of the said William Scott or his wife, whether existing now, or that may be contracted by either of them hereafter; and after the decease of such survivor, said tract of land to be equally divided among the children of the said William Scott, the child or children of any deceased child of his taking the share such deceased child would have taken if living. My intention in this item of my will is to furnish a home for my said son, William Scott, and his wife and children, during the natural life-

time of the said William Scott and his wife, or the survivor of either of them," &c.

His honor held, "that if the word 'owner,' in all the sections of the General Statutes, from 1550 to 1561, inclusive, which treat of the 'manner of acquiring the right of way' by railroads, is to be construed as it has been by" this court, in section 1550, then the special proceeding is perhaps erroneous, and the injunction should be granted. But he thought the word "owner" ought not to be so construed, for the reason, that the definition of the word "owner" is quite a different thing, used to designate one who has the power to license another to enter upon premises, from that of the same word, used to designate another authorized to convey the fee therein.

In the former case a manager is "owner" *pro hac vice;* in the latter only one, who himself has a fee simple, can be called the "owner." And so when compensation, under section 1552, is to be made, it is not to be made to the manager or controller, who may be only a tenant for a year, but to the owner of the fee. "Any other construction would, in cases like the present, defeat the express intent of the deed, by enabling one, who was not trusted by the donor, to squander valuable interests of his beneficiaries. In the case in hand, William Scott, plaintiff's grantee (grantor supposed), was not in sole possession under the deed, but permissively, which also distinguishes the case from that of *Tutt* v. *Railroad, &c.*" And his honor dissolved the injunction, and dismissed the complaint, on the ground that the deeds of William Scott do not estop other owners of the land, over which they propose to convey the right of way, from seeking compensation under the statute, &c.

From this decree the plaintiff company appeals, upon the following grounds:

I. (1) Because of error in holding that William Scott made the deeds to the right of way as executor of the will of E. Scott, deceased. (2) That the term "owner" is not to be construed in the sections of the General Statutes from sections 1550 to 1561, as it has been construed by the Supreme Court, in section 1550. (3) That the term "owner" in said sections is to be construed as referring to the owner of the fee. (4)

That the compensation is only to be made to the "owner" of the fee. (5) That William Scott was not in possession under the deed (will of Mrs. Scott). (6) In not sustaining the complaint, and perpetuating the injunction as to the interest of William Scott.

II. Because of error in not finding: (1) That the deeds of September 6, 1889, and of the 21st January, 1890, were valid conveyances of the right of way to said railway company. (2) That the deed of January 21, 1890, was a valid conveyance of the right of way to the said railway company.

III. Because of error in dismissing the complaint and dissolving the injunction.

IV. Because of error in dismissing the complaint and injunction as to all the defendants except S. A. Tolbert.

The defendants gave notice that they will ask the Supreme Court to sustain the decree of the judge, on the following grounds: (1) That the complaint does not state facts sufficient to constitute a cause of action. (2) That the word owner, in section 1550 of the General Statutes, has not been construed by the Supreme Court in the cases cited by his honor, as the presiding judge thinks it has been construed.

There may be some want of precision as to the use of the word "owner" in the provisions of the law, in relation to obtaining rights of way for railroads or compensation therefor. From the very nature of the subject, some general word was necessary to express the person who represented the land, as distinguished from those seeking the right of way over it. For such purpose we can not recall a more appropriate word. It is a general term, and the object being to promote a work considered to be for the benefit of the public, it may be that the legislature did not intend to make it necessary that the work should be delayed until the precise interest of all parties in the different tracts of land, no matter how indirect or remote, should be ascertained, even if a lawsuit should become necessary. "General words should receive the meaning which best suits the scope and object of the statute. * * * So the word 'owner' may mean 'occupier.' Under statutes providing for compensation to the 'owner' of lands

taken for highways, railways, or the like, the term applies to any one having a legal interest in the same, whether his estate be a fee or less than a fee. A tenant is an 'owner or party interested,' within such an act," &c. See Endlich on Interpretation of Statutes, sect. 96, page 126.

But we can not see that there is any such question in this case. There was no condemnation of the right of way, as provided for in cases where the parties do not agree. Here the railroad company and William Scott did agree, and Scott released the right of way. He did not, however, undertake to convey the fee or any thing more than an easement in the land, which is all the company claims to have acquired. As was said in the case of *Tutt* v. *Railway Company,* 28 S. C., 388: "It is certain that the question between these parties does not relate to the *quantum* of interest conveyed or not conveyed, for the right of way was already given by the State, but concerns only the mode by which the right of way was released." The question is whether William Scott had the right to release the right of way. If he had, then he could do it with or without compensation; and others have not, certainly at this time, the right to disregard his release. We think the case is like that of Tutt in all respects but one. In Tutt's case there was a trustee, but possession was given to the life tenant Cooke, not by the trustee but by the trust deed. So here Tolbert was named trustee, but nothing whatever was given him to do. He manifestly held only a nominal trust, never had possession of the land, and was not entitled to it; but that was fully and expressly given by the will of Mrs. Scott to her son and daughter-in-law. If the life estate had been given to William Scott alone, without any connection with his wife, as it was to Cooke in the Tutt case, it would be very difficult to distinguish the two cases.

But it will be observed that the devise of Mrs. Scott "gave the land to Samuel A. Tolbert, in trust for the use, benefit, and enjoyment of my son William Scott and his wife Rebecca, and the survivor of them, during their natural lives, in no wise subject to their debts, contracts," &c. This is certainly a very unusual provision, and, it must be confessed, is somewhat em-

barrassing. As it seems to me, the trust was executed. It certainly was as to William Scott, who was a grown man, under no disability, and the trustee had nothing whatever to do concerning his interest. See *Ayer* v. *Ritter*, 29 S. C., 137. It is true that Mrs. Scott was a married woman, and if the will of Mrs. Elizabeth Scott had gone into operation before the adoption of the Constitution of 1868, it might have been said, under the authority of the old cases, that there was a duty imposed upon the trustee, and that Tolbert was appointed for that purpose, viz., to protect the sole and separate estate of Mrs. Rebecca Scott from the marital rights of her husband, as was required under the old law; but as the will of Mrs. Elizabeth Scott came after the change of the Constitution (1868), no trustee was necessary to protect her interest, which was amply protected by law, and made a *legal* instead of an *equitable* estate. There is no question as to debts in this case. It seems to me that, since 1868, the simple fact alone that a beneficiary is a "married woman," is not sufficient to prevent the operation of the statute of uses in executing the useless trust. See the observations of Mr. Chief Justice McIver in *Davis* v. *Townsend*, 32 S. C., 115.

But there is still another peculiarity in this case. The parties named as joint tenants for life, with the right of survivorship, are husband and wife, and as they are in law theoretically *one person*, the question arises, can they be joint tenants? I confess, it is to me a new point, with which I am not familiar. Very little can be found in our reports upon the subject; but Chancellor Kent, whose specialty seems to have been the subject of real estate, states the doctrine thus: "The same words of conveyance which would make two other persons joint tenants, will make the husband and wife tenants of the entirety. This is a wise distinction, laid down in the old books, and it continues to this day to be the law. The husband alone may grant or charge the wife's land during their joint lives, and, if he be tenant by the courtesy, during his own life. He can not alien or encumber it, if it be a freehold estate, so as to prevent the wife or her heirs, after his death, from enjoying it, discharged from his debts and engagements,"

&c. 2 Kent, 132. We think that William Scott, the husband, had the power to release the right of way in the premises in question, for and during the joint lives of his wife Rebecca and himself.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded for such proceedings as may be necessary.

In this case, defendants filed a petition for rehearing, upon the grounds: 1. That defendants had demurred to the complaint, for that it did not state facts sufficient to constitute a cause of action, as a special tribunal created by statute could not be controlled by injunction; and that, while this ground had been urged by respondents as an additional ground for sustaining the judgment of the court below, this court did not consider it. 2. That the doctrine laid down in the text of section 96 of Endlich on the Interpretation of Statutes, is not sustained by the cases cited by him in the note. 3. That this court overlooked the fact, that in Tutt's case the action was to recover possession of the land, while in this case the defendants are seeking to recover compensation, under the statute, for the right of way occupied by the railroad. 4. In holding that the use was executed, the court had overlooked the case of *Posey* v. *Cook*, 1 Hill, 414; and had also overlooked the law of joint tenancy, as laid down in section 1829 of the General Statutes.

On this petition, the following order was endorsed, December 20, 1892,

PER CURIAM. After a careful consideration of this petition, we are unable to discover that any material fact or principle of law has either been overlooked or disregarded, and, therefore, there is no ground for a rehearing. It is, therefore, ordered, that the petition be dismissed, and that the stay of the *remittitur* heretofore granted be revoked.