6556

### GREEN v. CANNADY.

1. POSITION—DEBTS.—If it does not appear in partition proceedings that debts are fully paid, provision must be made for them in partition decree and payment of claims after decree made does not make it erroneous.

2. IBID.—JURISDICTION.—Court of Equity has power to make decree for sale in partition without issuing writ in partition.

3. IT SEEMS THAT ESTATES BY ENTIRETY BETWEEN HUSBAND AND WIFE do not now exist in this State; at least the separate estate acts should be given the effect to make her tenant in common with her husband in a grant to both in the absence of any expressed intention in the deed conveying the whole to the survivor.

4. DEEDS—TENANT IN COMMON.—If grantor convey the fee in land to himself and others, he thereby retains an interest in himself and becomes a tenant in common with the grantees.

5. REHEARING refused, but judgment modified on petition.

Before PRINCE, J., Laurens, April, 1906. Affirmed.

Action by Mary E. N. Green against T. W. Cannady *et al.* From Circuit decree, defendants appeal.

*Mr. T. W. Cannady, for appellants.* No citations.

*Messrs. Ferguson & Featherstone,* contra, cite: *As to construction of deeds:* 23 S. C., 235; 28 S. C., 129; 35 S. C., 327; 42 S. C., 345.

13—77

The opinion in this case was filed March 28, 1907, but on petition for rehearing was help up until

June 5, 1907. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff brought this action for the partition of two and three-fourths acres of land in Laurens County, alleging that she is entitled to five-sixteenths thereof, as tenant in common with Thomas W. Cannady, whose interest was seven-sixteenths, and with Mary A. Cannady and Nancy E. Rhodes, each of whom was alleged to own two-sixteenths. It is now conceded that the defendant, Thomas W. Cannady, has acquired the interests of William A. Cannady and Nancy E. Rhodes and owns all of the whole except what may be found to belong to plaintiff. The defendant denied that plaintiff had any interest whatever in the land, and the question of title was submitted to a jury, who rendered a verdict in favor of the plaintiff for five-sixteenths interest, as claimed. Judge Prince, on May 5th, 1906, made his decree affirming the verdict of the jury, and adjudging that plaintiff as owner of five-sixteenths of the premises was entitled to partition, and having taken testimony as to whether it was practicable to partition the property in kind, and concluding that it was impracticable to do so, he decreed that the land be sold, and after paying liens, costs and expenses, that five-sixteenths of the remainder be paid to the plaintiff and the remaining eleven-sixteenths be paid to defendant, Thomas W. Cannady, after retaining therefrom one hundred and fifty dollars, to be held to pay an alleged claim of Dr. M. C. Cox and other outstanding indebtedness against the estate of Thomas Cannady, whose one-third interest in the property had been devised to the defendant, Thomas W. Cannady, who was also his executor.

Thomas W. Cannady, although not a lawyer, conducted his own case in the Circuit Court, and now appeals upon the

following exceptions, which, if they lack perspicuity, certainly have the very great merit of being few and short:

"1. His Honor erred in sustaining testimony against a written and executed deed made by the parties through whom the plaintiff claims title.

"2. His Honor erred in charging jury as to intention and not to law.

"3. His Honor erred in passing decree to retain property before judgment was obtained for to pay claims that had not been established.

"4. His Honor erred in passing judgment to sell property damaging to the greater part to protect the lesser part."

The record fails to disclose any basis for the first exception, as it does not appear that the Court allowed any parol testimony to vary or contradict any written instrument.

With reference to the third exception, Rule 55 of the Circuit Court requires that if it does not appear that the debts are fully paid, due provision must be made in the decree for partition for the payment of the debts. In this case, Dr. M. C. Cox brought to the attention of the Court by petition that there were outstanding debts against the estate of Thomas Cannady, to whose interest, defendant, Thomas W. Cannady, succeeded as devisee and executor. It was, therefore, proper to make provision for payment of such debts. By consent, the record has been amended so as to incorporate therein a receipt of Dr. M. C. Cox in full payment of all claims against said estate given after the trial and judgment below. This, however, could not operate to make the decree of Judge Prince in this regard erroneous and reversible.

In so far as the fourth exception may be construed to question the power of the Court to decree for a sale in partition instead of issuing the usual writ for partition in kind, with right of commissioners to recommend sale if partition in kind cannot be had without injury to parties, it cannot be sustained. The evidence showed that the small lot of land contained a dwelling

house.    Before making decree, Judge Prince took testimony for the purpose of ascertaining whether partition in kind was practicable, and upon the testimony given found that it was impracticable, and we sustain his ruling.    A Court of equity has power to make decree for sale in partition without issuing writ in partition.    *McCrady* v. *Jones,* 36 S. C., 136, 15 S. E., 430.

The second exception is very general and vague and might be wholly disregarded, but respondent does not invoke the rule against general exceptions, and we will not, in the circumstances.    Respondent's attorney, with 3 . commendable frankness, argues the second exception on the supposition that appellant thereby intended to question the construction Judge Prince gave to the deed of Betsy Maddox, under which plaintiff claims, and as this construction really controlled the rights of the parties in the premises, we will not refuse to review it.

Both plaintiffs and defendants claim from a common source, Elizabeth C. Maddox, commonly known as Betsy Maddox.    The plaintiff claims under the will, dated June 26th, 1886, of Elizabeth C. Maddox, who died in October, 1900.    By her will she devised all the real and personal property she owned at her death to Nancy Maddox, John L. Maddox and Thomas Cannady during their lives, with remainder to plaintiff and her bodily heirs.    The life tenants all predeceased the testatrix, except Thomas Cannady, who died in 1901.    The defendant, Thomas W. Cannady, claims under the will of Thomas Cannady, who devised all his real property to Thomas W. Cannady, William A. Cannady and Nancy E. Rhodes.    Testator Thomas Cannady had acquired an interest in the premises in dispute under a deed executed by Elizabeth C. Maddox on December 25th, 1882, conveying the premises "unto Thomas Cannady, Jane Cannady, Nancy Maddox and Betsy Maddox," the last named being the grantor herself, with *habendum* and warranty clauses to "Thomas and Jane Cannady, Nancy Maddox and Betsy Maddox, their heirs and assigns forever."

The defendant, Thomas Cannady, was one of the witnesses to this deed. The case then turned on the construction of this deed, for if Betsy Maddox had conveyed away all her interest in the premises before her death, no interest therein could pass to plaintiff under her will. There was evidence that Thomas Cannady and Jane Cannady were husband and wife when the deed was executed in 1882, and that Jane Cannady died before her husband. Judge Prince, in his charge, instructed the jury that if Thomas and Jane Cannady were husband and wife they took an interest of one-third by entirety, and that the legal effect of the deed of Betsy Maddox to herself with others was to retain, reserve or except to herself one-third interest in the premises.

An estate by the entirety is thus defined in 1 Sharewood's Blackstone, 181: "If an estate in fee be given to a man and his wife, they are neither properly joint tenants, nor tenants in common; for husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seized of the entirety, *per tout et non per my;* the consequence of which is that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor." Such an estate was recognized in *Bomar* v. *Mullins,* 4 Rich. Eq., 80, and referred to in *Railway Company* v. *Scott,* 38 S. C., 34, 16 S. E., 185; *McLeod* v. *Tarrant,* 39 S. C., 275, 17 S. E., 773; 20 L. R. A., 846; and *DeLoach* v. *Sarratt,* 55 S. C., 283, 33 S. E., 2. But the question which now arises is whether this ancient doctrine of the common law was applicable in this State in 1882, when the deed in question was executed, in view of the Constitution and statutes as to property rights of married women.

Section 2436, Civil Code, makes partition between joint tenants compellable, and section 2473 destroys the right of the survivor to take the whole on the death of a joint tenant. *Varn* v. *Varn,* 32 S. C., 77, 10 S. E., 829. But the distinction between a joint tenancy which does not involve the unity of person and a tenancy by entirety which does involve

such unity, based upon the common law theory as to the
oneness of husband and wife, is generally regarded as a
sufficient reason for holding that tenancy by entirety may
exist, notwithstanding such legislation as to joint tenancy.
Freeman on Cotenancy and Partition, section 63 *et seq.*
Note to *Hardenbargh* v. *Hardenberg,* 18 Am. Dec., 371,
citing cases.   With respect to the effect of statutes in refer-
ence to the separate estate of a married woman, the authori-
ties are conflicting, some holding that even such statutes do
not destroy estates by entirety, as for example Bramberry's
Appeal, 156 Pa. St., 628, 36 Am. St. Rep., 64, 22 L. R. A.,
594; *Baker* v. *Stewart* (Kan.), 2 L. R. A., 434.   In New
Jersey, *Butlar* v. *Rosenbath,* 59 Am. Rep., 52, and in New
York, *Hiles* v. *Fisher,* 43 Am. St. Rep., 762, 30 L. R. A.,
305, the Courts do not follow the Pennsylvania rule en-
tirely, but hold that the married woman's statutes have the
effect of depriving the husband of the sole control of his
wife's interest, but do not destroy survivorship.   In West
Virginia, the statute of 1849 destroyed survivorship in
estates of entirety, and the separate property statute had
the effect of depriving the husband of the right to control
and take the profits and convey for his life the interest of
the wife in entirety estates. *McNeely* v. *South Penn. Oil
Co.,* 62 L. R. A., 562.   But in other jurisdictions, it is held
that tenancy by entirety is abolished by statutes enlarging
the property rights of married women, as for example,
*Donegan* v. *Donegan,* 103 Ala., 488, 49 Am. St. Rep., 53;
Robinson, Appellant, 88 Me., 17, 51 Am. St. Rep., 367, 30
L. R. A., 331.   See elaborate note in 30 L. R. A., 305-335,
showing at pages 314 and 316 a list of jurisdictions wherein
the Courts have discussed the effect on entirety estates of
statutes respecting property rights of married women.

So far as we know, this question has not been considered
or decided in this State. *Bomar* v. *Mullins, supra,* was
decided in 1851, and is, therefore, not in point.   The case
of *Railway Co.* v. *Scott,* 38 S. C., 34, 16 S. E., 185 (1892),
held under a devise "to W. and wife and the survivor, for

life, not subject to their debts, and after their death to be equally divided between the children of W.," that a release of right of way executed by W. was valid for the joint lives of himself and wife. The will became effective after 1868, but the case does not expressly decide whether the husband and wife took as joint tenants or as tenants of the entirety, and the effect of the married women's statute upon the entirety estates was not suggested or considered in the opinion. In *McLeod* v. *Tarrant,* 39 S. C., 271, 17 S. E., 773, 20 L. R. A., 846 (1892), Mr. Justice Pope expressed the view that a deed of land to husband and wife and their heirs and assigns forever created an entirety estate with survivorship, citing *Bomar* v. *Mullins, supra,* and *Railway Co.* v. *Scott, supra,* but the deed under construction was executed in 1850, and hence the question now presented was not involved nor considered. In *DeLoach* v. *Sarratt,* 55 S. C., 283, 33 S. E., 2, it was declared that such an estate exists in this State, but that the doctrine was inapplicable in that case as Mrs. Sarratt acquired the estate in 1862 or 1863, previous to her marriage in September, 1868.

The Constitution of 1868, art. XIV, sec. 8, declared: "The real and personal property of a woman held at the time of her marriage, or that which she may thereafter acquire, either by gift or grant, inheritance, devise, or otherwise, shall not be subject to levy and sale for her husband's debts, but shall be held as her separate property, and may be bequeathed, devised or alienated by her the same as if she were unmarried, *Provided,* that no gift or grant from the husband to the wife shall be detrimental to the just claims of his creditors."

The statutes in force at the time of the execution of the deed were as follows: General Statutes, 1882, sec. 2035: "The real and personal property of a married woman, whether held by her at the time of her marriage or accrued to her thereafter, either by gift, grant, inheritance, devise, purchase or otherwise, shall not be subject to levy and sale for her husband's debts, but shall be her separate property."

Sec. 2036. "A married woman shall have power to bequeath, devise or convey her separate property in the same manner and to the same extent as if she were married; and dying intestate her property shall descend in the same manner as the law provides for the descent of the property of husbands; and all deeds, mortgages and legal instruments of whatever kind, shall be executed by her in the same manner, and have the same legal force and effect, as if she were unmarried."

Sec. 2037. "A married woman shall have the right to purchase any species of property in her own name and take proper legal conveyances therefor, and to contract and be contracted with as to her separate property in the same manner as if she were unmarried, *provided,* that the husband shall not be liable for the debts contracted prior to or after their marriage, except for her necessary support."

Through many controversies arising under the act of 1882, the Court held that a married woman's right of contract was by that act limited to contracts as to her separate property, but the sweeping provisions of the Constitution of 1895 have unfettered woman as to her right of contract, thus showing the policy of this State in the emancipation of married women from the ancient rules of the common law touching their property rights. But, otherwise, with respect to the right of a married woman to acquire property, control and dispose of it as if unmarried, or in case of her death intestate that her property shall descend in the same manner as the law provides for the descent of the property of husbands, the Constitution of 1868 and pursuant statutes make her right absolute.

It may be suggested that the separate estate acts refer to the property of a married woman held or acquired without association with her husband, and, therefore, has no relation to an estate by entirety; but we think the broad design of the Constitution and statutes was to separate her property interest from the property interest of her husband, remove his control over it, give her absolute control thereof,

and to affect her property with the usual characteristic of descendibility.    We think it was within the design and effect of the separate estate legislation to destroy the oneness of husband and wife as to property rights, and, therefore, that a married woman may become a tenant in common with her husband in property upon a grant to both. Previous to 1868, a husband could not convey an estate directly to his wife, because the legal existence of the wife was merged in that of the husband, but under the Constitution of 1868, that oneness in property rights was so far abrogated as that a husband may convey to his wife and the wife to the husband.

If a husband or wife may grant the whole estate to either, then either could do less and make the other tenant in common in the premises, and if so, why may not a stranger make them tenants in common?    It would seem that the reason for the peculiar estate known as estate by entirety no longer exists in this State.    This view certainly accords best with modern conceptions with respect to the property rights of married women.    At least, the separate estate acts should be given the effect to make her tenant in common with her husband in a grant to both, in the absence of any express intention in the deed to convey the whole to the survivor, as in *Railway Co. v. Scott, supra.*

The deed in question does not even refer to Jane Cannady as the wife of John Cannady, but designates them separately by name, and it is only by evidence *aliunde* the deed showing the existence of such relation between them, that the argument in favor of the right of Thos. Cannady as survivor, to take the whole is deduced.    Our conclusion on that point is that Jane Cannady took under the deed as tenant in common with the others named as grantees therein and that on her death her interest descended to her husband and brothers and sisters living at that time.    We need not, however, seek to ascertain the exact interest Thos. Cannady has subsequently acquired in the estate, as it is admitted

that he owns all except that portion, if any, which Betsy Maddox retained or did not grant in her deed.

The next question is whether in a·deed purporting to convey the fee to several persons named, including the grantor, any portion of the premises can be construed to remain in the grantor. In 13 Cyc., 527, it is stated that "a person cannot convey to himself alone, and if he makes a conveyance to himself and others, the latter only will take as joint tenants," citing *Cameron* v. *Steves,* 9 N. Brunsw., 141. In 9 Ency. Law, 109, this case is referred to in a note as holding that a man cannot convey land to himself, and, therefore, a deed from A. to B. C., and himself and their heirs, being inoperative as to A., vested the whole estate in B. and Č. as joint tenants. The note further states that Carter, C. J., said in that case: "It is laid down in Perkins that a feoffment with livery from A. to A. and B. vests the whole estate in B., for A. could not make livery to himself; therefore, by virtue of the livery to B., he becomes enfeoffed of the whole. The reason of this case would seem not to apply equally to statutory conveyances where no livery is required, and it may be doubted whether a man could enfeoff another of an undivided share of an estate to be held with the feoffment. But there is another principle which would seem applicable to this case, under which the whole estate would vest in Cameron and Marshall. In Shepherd's Touchstone (a book of very high authority), at page 82, it is laid down: 'If a deed be made to one that is incapable and to others that are capable, in this case it shall enure only to him that is capable. (And if they were to be joint tenants, the person who is capable shall take the whole; but if they were to be tenants in common, he shall have only his particular share.)'" By no construction under our laws could it be held that Thomas Cannady, Jane Cannady and Nancy Maddox were joint tenants under the deed, but they must be construed to be tenants in common, and since they take under our statutory conveyance without any feoffment with livery of seizin, the

reasoning in the case cited should not be sufficient to con-
strue the deed as conveying the whole estate to them. The
question should be determined by ascertaining the intention
of the grantor to be gathered from the whole instrument.
It is manifest that the grantor did not intend to convey the
whole estate to the parties named other than herself, and
that her purpose was to remain owner of some interest in
the premises. To construe this deed by, in effect, striking
her name from it except as grantor, would be to enlarge its
legal effect contrary to her express intention. The circum-
stances that the house upon the lot was built by the united
efforts of all the parties, that after the conveyance they all
lived on the premises and used the fruits of their joint
labors as one family, all harmonize with a construction
which regards the deed as creating a tenancy in common
among the grantor and grantees in equal proportions.
Under this view, Betsy Maddox owned one-fourth of the
premises at the time of her death, which passed to plaintiff
under her will, and hence it was error to so construe the
deed as to give plaintiff five-sixteenths.

This conclusion renders it necessary to set aside the ver-
dict and judgment and to grant a new trial on the issue of
title unless the plaintiff will remit therefrom to the extent of
one-sixteenth interest in the premises. In the event the
plaintiff so remits, then the decree of Judge Prince will
stand modified so as to allow plaintiff one-fourth, instead
of five-sixteents, and defendants three-fourths, instead of
eleven-sixteenths, of the proceeds of the sale for partition,
after deducting costs, expenses and liens.

The judgment of this Court is that the verdict and judg-
ment on the issue of title be set aside *nisi*, and that the
decree of the Circuit Court be modified in accordance with
the views herein announced, and in all respects that it be
affirmed.

June 5, 1907. Per Curiam. After carefully consider-
ing the petition for rehearing in this case, the Court is

satisfied that its judgment heretofore announced should be reformed.

. In the opinion the following language occurs: "Our conclusion on that point is that Jane Cannady took under the deed as tenant in common with the others named as grantees therein, and that on her death her interest descended to her husband and brother and sisters living at that time. We need not, however, seek to ascertain the exact interest that Thos. Cannady has subsequently acquired in the estate, as it is admitted that he owns all except that portion, if any, which Betsy Maddox retained or did not grant in her deed."

We are now convinced that we were mistaken as to the admission of counsel, and that the effect of the admission was that the defendant, Cannady, had acquired all interests in the premises except the interest of Betsy Maddox.

With a view, therefore, to ascertain whether the erroneous charge was prejudicial, we will look further into the record.

The undisputed facts are capable of but one conclusion. Jane Cannady died intestate in April, 1886, leaving as her only heirs at law her husband, Thomas Cannady, her brother, John Maddox, and her sisters, Nancy and Betsy Maddox. As Jane took one-fourth of the land under this deed, at her death, one-half of her interest, or one-eighth, would go to her husband, Thomas Cannady, and one-third of one-eighth, or one twenty-fourth, would go to each of the brother and sisters. As the brother, John, died in 1887, intestate, and without leaving widow, child, father or mother, his interest went to his sisters, Nancy and Betsy, so that in adition to the one-fourth interest reserved by Betsy Maddox in her deed, she acquired by inheritance a further interest in the premises amounting to one-sixteenth thereof, aggregating an interest at the time of her death of five-sixteenths, which passed under her will to the plaintiff.

The verdict of the jury finding such interest for the plaintiff being demonstrably correct, notwithstanding the erro-

neous instructions considered above, the judgment thereon ought not to be disturbed.

The judgment of the Circuit Court is, therefore, affirmed.