ALERT CABLE TV OF SOUTH
CAROLINA, INC. d/b/a Time
Warner Cable, Plaintiff,

v.

CP LIMITED PARTNERSHIP d/b/a
Saddlebrook Manufactured Home
Community and Knology of Charleston, Inc., Defendants.

No. C/A 2:98–3782;18.

United States District Court,
D. South Carolina,
Charleston Division.

Feb. 15, 2000.

Frank Ellerbe, Columbia, SC, Bonnie Shealy, Columbia, SC, for plaintiff.

Allen Gibson, Jr., Charleston, SC, Elizabeth Warner, Charleston, SC, William Gaillard, Charleston, SC, for defendants.

## ORDER

NORTON, District Judge.

This declaratory judgment action comes before the court on cross-motion for summary judgment.

### I. BACKGROUND FACTS

During the 1980s, Joseph L. Tamsberg, a residential developer, built Saddlebrook Manufactured Home Community, a mobile home park, in Dorchester County, within the city limits of North Charleston. The owners of Saddlebrook own the property in fee simple and lease each lot to a tenant. At the time the subdivision was being developed, Time Warner Cable [1] was invited to provide cable services to the residents and lay its network of cables alongside the power lines of SCE & G and Bell South. Time Warner Cable had no written agreement with Saddlebrook for any private easement or any right of access to provide cable service. The developer granted recorded, private easements to SCE & G and Bell South, but not to Time Warner Cable. These private easements cross the individual lots leased by the tenants. The developer also dedicated water and sewer easements to Dorchester County, but these public easements do not cross the individual lots leased by the tenants.

On September 10, 1998, Defendant Knology [2] entered into a contract with Sad-

---

1. Time Warner Cable has a nonexclusive franchise to provide cable services in Dorchester County and in the City of North Charleston.

2. Knology has a nonexclusive franchise to provide cable services in Dorchester County and in the City of North Charleston.

dlebrook, giving Knology the exclusive right to provide cable television service within the Saddlebrook community. For these exclusive rights, Knology agreed to pay to Saddlebrook a per subscriber fee per month for every cable television customer. On December 11, 1998, Saddlebrook informed Time Warner Cable that it had to remove its cable facilities from Saddlebrook's property within forty-five days. The same day, Saddlebrook informed its residents that Knology would now be the exclusive provider of cable services.

Time Warner Cable filed suit, initially seeking a declaratory judgment that it had a right to continue to provide service through cables located in dedicated utility easements and public rights of way. However, the Honorable Patrick Michael Duffy denied Time Warner Cable's request for a preliminary injunction because the county records indicated that the attempted dedication of the roads was never accepted by Dorchester County and the utility easements did not include areas along the rear lot lines where Time Warner Cable's cable lines were located. As a result, Time Warner Cable filed an Amended Complaint in which it sought, *inter alia,* a declaratory judgment that it has a right to rebuild its cable system in Saddlebrook to provide service to the residents by laying its cable facilities along the water and sewer easements within the subdivision.

## II. PROCEDURAL HISTORY

On May 10, 1999, Plaintiff filed an Amended Complaint, seeking damages and injunctive relief for six causes of action. On November 17, 1999, the parties filed a Joint Stipulation of Dismissal of Certain Claims, in which Plaintiff agreed to dismiss with prejudice three of its causes of action and all claims for monetary relief on the remaining causes of action. In exchange, Defendants agreed to dismiss with prejudice all of their counterclaims. With

the issues thus narrowed, the parties filed Cross–Motions for Summary Judgment on the issue of whether Plaintiff could provide cable television service to customers in the Saddlebrook Mobile Home Park in competition with Defendant Knology. On December 20, 1999, this court heard the parties' oral arguments on these motions.

## III. LAW ANALYSIS

■ As a franchised cable provider, Time Warner Cable has the right to install its cable by using "public rights-of-way" and "easements ... which have been dedicated for compatible uses." 47 U.S.C. § 541(a)(2) (1994).[3] However, Time Warner Cable has no statutory right to install its cable lines on the private easements Saddlebrook granted to Bell South and SCE & G in this case. *See Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condominium Council of Co–Owners,* 991 F.2d 1169, 1173 (4th Cir.1993) (holding that federal law "does not allow cable companies to force landlords or property owners' associations to allow cable companies to use easements on their private property"); *see also Cable Holdings of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd.,* 953 F.2d 600, 605–06 (11th Cir.1992) ("The language and legislative history of [the statute] indicates that the Cable Act does not provide a right to access wholly private easements granted by property owners in favor of particular utilities."). Thus, Time Warner Cable asks this court to issue an order declaring that it has a right to provide cable television service throughout Saddlebrook by using easements dedicated to Dorchester County as the provider of water and sewer services to the mobile home park. However, even if this court were to declare that these public easements existed in the locations in which Time Warner Cable claims they are located, Time Warner Cable still cannot prevail. The water and sewer lines end at a point

---

**3.** Section 541(a)(2) provides in pertinent part that "[a]ny franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through ease-

ments, which is within the area to be served by the cable system and which have been dedicated for compatible uses." 47 U.S.C. § 541(a)(2) (1994).

of interconnection on each lot where they are connected to individual water and sewer lines that run to each mobile home. These lines that interconnect the county systems to each mobile home are not dedicated to Dorchester County, and thus are not part of the public easements. Instead, Saddlebrook owns and is responsible for the lines and the property between the meter and the tenant's mobile home. As a result, Time Warner Cable must turn to state law and argue that those tenants who choose to obtain services from them could grant a license to them to extend the cable lines across their rented lots and into their mobile homes.[4]

■ Time Warner Cable argues that tenants have a right to grant such a license as a fundamental tenet of landlord-tenant law. For example, it quotes American Jurisprudence for the proposition that

> [t]he right to use leased premises during the term specified in the lease is transferred from the landlord to the tenant, and during the existence of the lease, *the tenant is the absolute owner of the demised premises* for all practical purposes for the term granted, the landlord's rights being confined to a reversionary interest.

49 Am.Jur.2d *Landlord & Tenant* § 484 (1999) (emphasis added).[5] Defendants Saddlebrook and Knology disagree. Quoting the South Carolina Cable Act, they argue that Time Warner Cable does not have the right to cross private property, i.e., the individual lots, without the consent of the property owner. Specifically, section 58–12–70 provides that "[n]o cable television company may install underground wires or other underground equipment on private property without the writ-

ten consent of the property owner." S.C.Code Ann. § 58–12–70 (1976).

Time Warner Cable argues that the tenants are the "property owners" referred to in the statute. In support of this argument, Time Warner Cable cites this court one hundred year old-precedent from this state that interpreted the term "owner" to include a "life tenant." *See Georgia, C. & N. Ry. Co. v. Scott*, 38 S.C. 34, 16 S.E. 185 (1892). This court rejects Time Warner Cable's argument for several reasons. First, a "life tenancy" is very different than a rental tenancy. The former is "an estate in real property in which the tenant has a freehold interest for his life," whereas a rental tenancy involves a tenant "who has the temporary use and occupation of real property *owned* by another person (called the 'landlord')." *See Black's Law Dictionary* 924, 1466 (6th ed.1990) (definitions of "Life Tenancy" and "Tenant") (emphasis added). A life tenancy, like a fee simple, is a freehold estate; a tenancy for years, like those tenancies involved in this case, is a non-freehold estate. *See, e.g., Pacific Southwest Realty Co. v. County of Los Angeles*, 1 Cal.4th 155, 2 Cal. Rptr.2d 536, 820 P.2d 1046, 1051 (1991) ("Notwithstanding the fact that a lease is a present possessory interest in land, there is no question that as a nonfreehold estate it is a different species of interest from a freehold estate in fee simple. Any other conclusion would be contrary to centuries of English and American common law...."); *Smith v. Planning & Zoning Bd.*, 203 Conn. 317, 524 A.2d 1128, 1131 (1987) ("A life tenant [is] a holder of a freehold estate."). "A 'freehold estate' is a right of title to land." *Black's Law Dictionary* at 665 (definition of "Freehold"). Ti-

---

**4.** Time Warner Cable does not argue that it has any legal rights stemming from its prior authorization to provide cable service to the residents of Saddlebrook.

**5.** Time Warner Cable also argues that the standard rental agreement from Saddlebrook does not preclude a tenant from granting a cable television company the right to extend

its line across the leased lot to provide service to the tenant's home. Of course, it is equally true that the standard lease agreement does not provide for or retain the right to grant such licenses either. Because the leases do not specifically address the issue, this court finds that arguments regarding the language of the leases are not dispositive.

tle is the "formal right of ownership of property. Title is the means whereby the owner of lands has the just possession of his property." *Id.* at 1485 (definition of "Title") Therefore, the landlord in this case and the life tenant in *Scott* both possessed title to the real estate and can properly be considered "property owners." The tenants in this case cannot.

Second, in another section of the South Carolina Cable Television Act, the term "landowner" is used instead of "property owner." *See* S.C.Code Ann. § 58–12–60 (1976). Section 58–12–60 provides that "[n]o cable television company may damage private property on which a utility pole is located without just compensation to the landowner for the damage suffered by the landowner's property." *Id.* Although the General Assembly did not define either the terms "property owner" or "landowner," both terms are synonymous and are more readily understood in common parlance to refer to a "landlord" than a "tenant." *See Pacific Southwest Realty Co.,* 2 Cal.Rptr.2d 536, 820 P.2d at 1051 ("A leasehold is not an ownership interest, unlike the possession of land in fee simple. . . . It is for that reason that common parlance refers to the 'owner' of a freehold estate, encumbered or unencumbered, but to the 'holder' of a lease; the freeholder is seised of land, whereas the leaseholder is not."). In the absence of any statutory language that the term "property owner" should be construed so as to include mere tenants, this court will apply the common law understanding of the term to the facts of this case. *See O'Laughlin v. Windham,* 330 S.C. 379, 498 S.E.2d 689, 691 (S.C.App. 1998) ("A strong presumption also exists that the General Assembly does not intend to supplant common law principles when enacting legislation.").

Finally, if this court were to adopt the reading of the statute urged by Time Warner Cable, then tenants would be able to install cable service over the objection of their landlord, the owner of the property, even when such installation would include the drilling of holes in the walls or floor of the building and the attachment of cables along the wall and underneath the ground.

For these reasons, this court finds that Time Warner Cable cannot install its cable lines over the individual mobile home lots without the written consent of Defendant Saddlebrook. Because Saddlebrook has refused to grant such consent, a declaratory judgment that Time Warner Cable is entitled to use the public easements on the Saddlebrook property to install cable lines would be meaningless as the company cannot serve the tenants without the consent of their landlord. Therefore, summary judgment for Defendants Saddlebrook and Knology is appropriate.

It is therefore,

**ORDERED,** that Plaintiff's Motion for Summary Judgment is **DENIED** and Defendants Saddlebrook and Knology's Motion for Summary Judgment is **GRANTED.**

**AND IT IS SO ORDERED.**